CITY OF GRAND RAPIDS, MICH., et al.
v. McCURDY.

No. 9504.

Circuit Court of Appeals, Sixth Circuit.

June 24, 1943.

Clifford C. Christenson, of Grand Rapids, Mich. (Ganson Taggart and Clifford C. Christenson, both of Grand Rapids, Mich., on the brief), for appellants.

James T. McAllister, of Grand Rapids, Mich., for appellee.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The appeal presents important questions involving the status of loans made by a closed National Bank to municipal corporations, and the right of the receiver of the bank to deduct from liquidating dividends interest on the loans from the

time they were made to the date of their payment, notwithstanding a written undertaking by the bank that the loans were to be without interest. The District Court held for the receiver, and the City and the Board appeal.

The situation leading to the controversy grows out of the Michigan Banking Holiday of 1933. On February 11 of that year the City and Board of Education had funds on deposit with the bank in excess of two and one-half million dollars. The bank, being closed on February 12 and 13 due to the 12th being Sunday and the 13th being observed as Lincoln's birthday, a national holiday, remained closed thereafter because of a proclamation by the Governor of Michigan declaring the days from the 14th to the 21st inclusive, to be public holidays during which banks were not to be open for the transacting of banking business. On February 21 a second proclamation permitted the opening of banks on a restricted basis beginning February 23, their permissible functions to include payment to depositors of Reconstruction Finance Corporation moneys on deposit for welfare purposes. In pursuance of the proclamation the bank, in common with others, permitted 5% of deposits to be withdrawn. At the same time its officers began making plans for the reopening of the bank on an unrestricted basis. No successful plan of reorganization was, however, developed, and the bank never reopened. Its history during this period is sufficiently detailed in Uhl v. First National Bank & Trust Co., D. C., 24 F.Supp. 275, affirmed per curiam by this court, 94 F.2d 1013, certiorari denied, 304 U.S. 584, 58 S.Ct. 1058, 82 L.Ed. 1546.

On February 27, 1933, the City, in pursuance of the action of its Commission, borrowed $50,000 from the bank and executed a three month note therefor bearing no interest, the date of payment being later extended by mutual consent. At the same time the Board of Education borrowed $175,000 on the same terms with the provision that the Board's deposit with the bank should be collateral security for the loan. In addition, the City had on deposit with the bank upwards of $150,000 borrowed from the Reconstruction Finance Corporation for welfare purposes. An agreement was made with the bank to honor all checks against this fund issued prior to February 11. By means of these checks and other withdrawals, nearly all of this fund was obtained from the bank. On August 22, 1933, the conservator of the bank declared a 50% dividend to all depositors. From this dividend he deducted the amount of the loans made by the bank to the City and the Board, stamped the notes as paid and returned them to their makers. Subsequently it was determined that the withdrawal of the welfare funds was illegal and an adjustment was made therefor out of dividends of 10% paid to the City in June, 1934. On October 19, 1936, the receiver declared a third dividend of 10% which was paid in full on the deposit claims of the City and the Board without deductions. Each year the City and the Board had audits made by independent accountants who sought verification from the bank of its obligation to the City and the Board, and the receiver in each year certified that no obligation was owing to the estate either for interest or otherwise. Neither the conservator nor the receiver made demand upon the City or the Board for interest until December 7, 1942, when the receiver notified the appellants that a final dividend would be declared and from it he intended to deduct interest on the loans under instructions from the Comptroller of the Currency. The present suit by the City and the Board followed, and in it they seek to enjoin the receiver from deducting or setting off any interest on the loans against their final dividend if and when it is declared and paid. The receiver answered, asserted his causes of action for interest, and sought and obtained the decree here assailed which denies the prayer for injunction and orders that the receiver may deduct the interest from the final dividend to the appellants.

The decree is challenged on a number of grounds: (1) that the transaction was not an illegal preference but a bona fide loan which has now been fully discharged; (2) that the receiver's causes of action are barred by the statute of limitations and laches; (3) that the receiver, having accepted the principal without making any demand for interest, is now estopped to press his claim therefor, and (4) that the City, not having authorized an interest bearing loan, is not bound to pay interest.

The receiver contended, and the court found, that the loans, both to the City and

**618**

to the Board, constituted illegal preferences, and that the loan contracts, by the terms of which interest was not to be paid, were null and void because expressly prohibited by the National Banking Act, 12 U.S.C.A. § 91. This section, insofar as applicable, provides: "and all payments of money to either (shareholders or creditors), made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another * * * shall be utterly null and void."

That the bank was insolvent at the time the loans were made to the City and the Board is established by the decision in Uhl v. First National Bank & Trust Co., supra, and is not here contested. The loans are defended on the ground that they were not made by the bank with the intent to prevent the application of the bank's assets in the manner prescribed by the statutes of the United States, and were not made with a view of preferring appellants to other creditors. It is urged that the court's conclusion that the contracts were a subterfuge is not supported by evidence; that the bank and the appellants were all acting in good faith and had carefully provided for legal contracts upon which the bank could institute suit, if necessary, to recover the amount of the loans; that the loans were not charged upon the books of the bank to the deposit accounts of the appellants, but were set up thereon as a separate transaction; and that there were no secret agreements or provisions, both parties to the loan contracts acting openly and above-board in the transactions.

■ In Texas & Pacific R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, the Supreme Court characterized the National Banking Act, 12 U.S.C.A. § 21 et seq., as being designed, in case of disaster, to insure uniformity in the treatment of depositors and a ratable distribution of assets—the policy of equal treatment having been held to preclude even the preference which, under statutes, is otherwise accorded to the United States when its debtor becomes insolvent. It pointed out that the legitimate expectations of the great body of depositors are defeated and confidence in the fairness of the National Banking Laws and their administration impaired when one or more depositors are preferred over the generality. See American Sugar Refining Co. v. Anderson, 6 Cir., 107 F.2d 948. It is idle to contend that neither the City nor the Board obtained preferential treatment from the bank. Had these municipal corporations not been large depositors no loans would have been made to them, and the fact that the loans were without interest and secured by the deposits, brings into bold relief the fact that the money was advanced to them primarily because they were depositors. Had they sought money elsewhere they would have been obliged to pay interest. It was understood, at least by the City if not by the Board, that the loans might be construed as unlawful preferences. This is made clear by the letter of February 24, 1933, to the Bank, wherein it was said that the transfer of the welfare funds was "with the understanding if it shall later be established that such transfer operates as an unlawful preference such adjustment of the indebtedness of the bank to the City shall be made as shall be necessary to correct such unlawful preference."

■ That the City and the Board obtained preferential treatment, clearly prohibited by the National Banking Act, is beyond question. It was, as found in Kullman & Co. v. Woolley, 5 Cir., 83 F.2d 129, a preference in time. It might possibly have amounted to a preference in final outcome. At the time the loans were made—a period of public hysteria and panic—no one could safely predict what ultimately might be the shrinkage in the bank's assets, nor the capacity of the City or the Board to raise money by taxation from distressed taxpayers. In any event, if these loans may be defended as not constituting an illegal preference, much larger loans in respect to smaller deposit balances available as security could also be defended. It is no answer to say that this was not preferential treatment because the evidence fails to disclose that other depositors sought loans from the bank during the period and were refused. Certainly, no private individual or corporation having a deposit in the bank could, with reasonable assurance, have expected to obtain a loan from a closed bank under the circumstances that then existed, and no private depositor could have expected to get money from the bank without interest. The dependence of the loan upon the

deposit is so clear, when realistically viewed, that no profession of good faith or open dealing on the part either of the bank or the appellants can rescue it from a construction that it was a subterfuge, however well intentioned, and such declarations but emphasize it as a method of getting money from the bank in avoidance of the carefully devised prohibitions of the National Banking Act.

■ The fact that the withdrawal of the welfare funds was authorized by the Governor's proclamation is of no importance since the federal law is paramount with respect to National Banks. Davis v. Elmira Savings Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700; Uhl v. First National Bank & Trust Co., supra. The dictum in Kullman & Co. v. Woolley, supra [83 F.2d 133], wherein the court, in merely passing comment, observed that "if pay rolls and foodstuffs ought to have been provided for, the bank should have made special loans for them not subject to offset by the deposit accounts," is not to be construed as a deliberate judgment either binding upon us or even highly persuasive. Nor is the alleged conflict between the position of the receiver's counsel in the present case, and his argument in the Uhl case, of any consequence.

■ In their contention that the claims of the receiver are outlawed by the Michigan Statute of Limitations, the appellants point to the distinction that exists under the law of Michigan between a counterclaim in the nature of recoupment, and one in the nature of set-off. If the receiver's claims be that of set-off it is contended that they are barred after six years under the Statute (Comp.Laws Supp.Mich.1940, § 13976, Mich.Stat.Annot. § 27605)—if the claim is one of recoupment it is conceded that it is not barred. Warner v. Sullivan, 249 Mich. 469, 229 N.W. 484. Recoupment differs from set-off mainly in that the claim must grow out of the same transaction which furnishes the plaintiff's cause of action, and is in the nature of a claim of right to reduce the amount demanded. Recoupment goes to the justice of the plaintiff's claim, while set-off is not necessarily confined to the justice of such particular claim. The defense of recoupment exists as long as the plaintiff's cause of action exists and may be asserted, though the claim as an independent cause of action is barred by limitations.

■ The appellants insist that the receiver's claim in each case is one of set-off—that they are suing on a contract of deposit, the validity of which the receiver does not deny but asserts that he is entitled to interest because of money which the appellants procured from the bank by means of illegal contracts. Conceding, for the argument, that the loan contracts were void and that the receiver's claim for interest arises out of preferences, yet those preferences were transactions separate from the contract of deposit and gave rise to causes of action not based upon the transaction on which the appellants sue. But this argument overlooks the actualities. The deposit contracts cover both deposits and withdrawals. Assuming, as we do, that the loans were a mere subterfuge to permit the City and the Board to withdraw from the bank a part of their deposits, the withdrawal, however designated, was in pursuance of the deposit contract, and claim and counterclaim both arise out of the same transaction. The cases cited by the appellants, Morehouse v. Baker, 48 Mich. 335, 12 N.W. 170, Auditor General v. Olezniczak, 302 Mich. 336, 4 N.W.2d 679, are not contra.

■ But another reason leads to the conclusion that the Michigan Statute of Limitations does not bar the receiver's claims. The National Banking Act constitutes by itself a complete system for the establishment and government of national banks. Cook County Nat. Bank v. United States, 107 U.S. 445, 448, 2 S. Ct. 561, 27 L.Ed. 537. Since it is by virtue of the statute that the loan agreements created unlawful preferences, Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L. Ed. 694, the extent and nature of the legal consequences of this condemnation are to be derived from it and the federal policy which it has adopted. "Nothing that the state can do will be allowed to destroy the federal right which is to be vindicated." Board of Commissioners of Jackson County v. United States, 308 U. S. 343, 60 S.Ct. 285, 288, 84 L.Ed. 313. In Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. ——, decided March 1, 1943, it was held that where authority is asserted which has its origin in the Constitution and statutes of the United States, the controversy in respect to it is in no way dependent upon the laws of the state, and it is for the

620

Federal Courts to fashion the governing rule of law according to their own standards. State notions of laches and state statutes of limitations have no applicability to suits by the government. United States v. Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539.

 The National Banking Law controls the liquidation of national banks in an exercise of Constitutional authority. Starr v. O'Connor, 6 Cir., 118 F.2d 548. It was said in Clearfield Trust Co. v. United States, supra, that it would lead to great diversity in results to make identical transactions subject to the vagaries of the laws of the several states. In United States v. Union Planters Nat. Bank & Trust Co., 6 Cir., 134 F.2d 1016, we held, upon consideration of the Clearfield Trust Co. case, that the right of the government to recover upon a check paid upon a forged endorsement was not barred by the Tennessee Statute of Limitations. It is true that in Rawlings, Receiver, v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605, it was held that a state statute of limitations applies in an action by a receiver of an insolvent National Bank against a stockholder to collect a Comptroller's assessment. This is, however, an action wherein the statutory liability is contractual in its nature. The claim in the present case arises not out of contract but out of distinct violation of a federal statute. Recovery is not precluded by state law.

 The argument based upon laches and estoppel would be important were it not for the fact that defendant, as receiver, is an officer of the United States. As such it is doubtful that he may waive any claim of the trust estate. Leonard v. Gage, 4 Cir., 94 F.2d 19; Hood v. Hardesty, 4 Cir., 94 P.2d 26. But even if there could be a waiver or estoppel on the part of an officer of the United States performing purely administrative duties, it is not clear that the appellants have been prejudiced by the receiver's delay in asserting the claims. Clearfield Trust Co. v. United States, supra. The appellants assert such prejudice because they are municipal corporations and can obtain money only by setting forth anticipated income, expenses, and indebtedness, and levying taxes for their payment; they have not levied taxes to cover interest on the loans and have anticipated in their budgets the full amount of the final dividend without any deduction for such interest because of repeated concessions by the receiver that he had no claim for interest. This does not, however, establish prejudice. It is public knowledge that many municipal corporations operate upon a deficit budget rather than on one forecasting a surplus. The mere fact that a deficit will occur in one year which will be eliminated by adequate budgeting in the next, does not establish the receiver's delay as prejudicial.

 It is not controlling upon the validity of the receiver's claims that the City and the Board had been given no authority to borrow money except upon obligations carrying no interest. The issues are covered by federal and not by state law. In any event, the receiver's causes of action do not arise out of contract, but rest rather upon quasi contract or tort, and a state rule that a contract to pay interest may not be implied in law against the state or a municipality thereof (University of Michigan v. Rose, 45 Mich. 284, 300, 4 N.W. 738, 5 N.W. 674, 7 N.W. 875; Herrmann v. Gleason, 6 Cir., 126 F.2d 936) is inapplicable. Finally, the cause is one in equity wherein the appellants seek equitable relief and having acquired advantage over other depositors of the bank in securing a portion of their money in advance of others, and being to that extent enriched, it is not unreasonable that they pay for its use according to the accepted and conventional measure of compensation for such use. The court did not abuse its discretion in directing that the receiver be authorized to deduct from the final dividends interest at the legal rate for the time the money was out of the bank.

The decree is affirmed.