415 A.2d 689

HOUSEHOLD CONSUMER DISCOUNT COMPANY and
American Finance Corporation, Appellees,

v.

Marian VESPAZIANI, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 24, 1979.

Decided May 30, 1980.

210

John W. Dineen, Neighborhood Legal Services, Aliquippa, for appellant.

John H. Morgan, Howard D. Schwartz, Eckert, Seamans, Cherin & Mellott, Pittsburgh, for Household Consumer Discount.

Reed J. Davis, Davis & Mazzotta, P.C., Pittsburgh, for American Finance Corp.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN, and FLAHERTY, JJ.

## OPINION

NIX, Justice.

The instant appeal comes to this Court by a grant of allowance of appeal from the Superior Court order affirming the dismissal of appellant's counterclaim by the Common Pleas Court of Beaver County.[1]

In 1972, appellant and her husband entered into two separate loan agreements, one with American Finance Corporation and the other with Household Consumer Discount Company, appellees. Both loans were to be repaid over a thirty-six month period. After her husband's death, appellant was unable to continue payments on the loans and in 1976, two separate actions were filed in assumpsit by appellees to collect on those loans.[2]

By way of Answer, appellant asserted violations of the federal Truth in Lending Act, 15 U.S.C.A. § 1601, *et seq.*, as amended, and Regulation Z, 12 C.F.R. sec. 226, as a common law recoupment. Appellees filed preliminary objections contending that the one year statute of limitations contained in the Act, 15 U.S.C.A. § 1640(e) barred the counterclaim.[3] These objections were sustained by the trial court and after consolidation for appeal the Superior Court affirmed.[4] 255 Pa.Super. 367, 387 A.2d 93 (1978).

1. This Court's jurisdiction rests upon the Act of July 31, 1970, P.L. 673, No. 223, art. II, § 204, 17 P.S. § 211.204(a) (Supp.1978–1979); now 42 Pa.C.S.A. § 724(a).

2. The action by Household Consumer Discount Company was filed on September 24, 1976, and that of American Finance Corporation on November 8, 1976.

3. Appellees had raised 15 U.S.C.A. § 1640(h) (Supp.1980) below, but expressly elected not to advance that argument in either the Superior Court or this Court.

4. Consolidation in the Superior Court was pursuant to Pa.R.A.P. 513.

The Truth in Lending Act (TILA) requires prospective creditors to fully disclose the credit costs of a given loan to prospective debtors in order to ensure the consumer's ability to readily compare the various credit avenues open prior to contracting, and to "protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C.A. § 1601 (Supp.1980). In order to further that aim, Congress created a civil cause of action which in effect established each debtor as a private attorney general to enforce the disclosure provisions. *See* 15 U.S.C.A. § 1640(a) (Supp.1980). For reasons which go unexplained in the legislation, the remedy was coupled with a one year statute of limitation. Thus, any affirmative action beyond that period is barred.

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year from the date of the occurrence of the violation.*

15 U.S.C.A. § 1640(e). (emphasis added).

The ultimate issue presented in this appeal is whether this "built-in" statute of limitations bars a debtor-defendant from asserting a TILA claim against the creditor-plaintiff. Before we may reach this ultimate issue, two preliminary concerns must first be resolved. These are (1) whether state or federal law governs our determination of the ultimate issue, and (2) may a TILA claim be asserted by the debtor-defendant in a defensive posture.

## I. *Choice of Law*

We begin our analysis with the proposition that state courts may not discriminate against a federal cause of action. State courts are required to enforce federal law or violate the supremacy clause of Article VI of the United States Constitution. *Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947). Once obliged by congressional grant[5] to provide a forum for the vindication of that right,

---

5. Here 15 U.S.C.A. § 1640(e), *supra*, specifically permits any court of "competent jurisdiction" to entertain the action. State courts thereby have the authority to hear such claims.

we must determine whether federal or state law governs the resolution of a given question concerning the federally created cause of action, especially where it is raised as a defense.

In *Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952), a railroad employee instituted an action in state court under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51 *et seq.*, alleging the negligence of his employer caused his on-the-job injuries. The employer asserted as a *defense*, a writing signed by the employee, claimed to be a written release from liability. The Ohio Supreme Court ruled that the "release defense" was governed by state law.  The United States Supreme Court reversed, saying:

> .  .  .  [The] validity of releases under the Federal Employers' Liability Act raises a federal question to be determined by federal rather than state law.  .  .  .
> Manifestly the federal rights affording relief to injured railroad employees under a federally declared standard could be defeated if states were permitted to have the final say as to what defenses could and could not be properly interposed to suits under the Act.  Moreover, only if federal law controls can the federal Act be given that uniform application throughout the country essential to effectuate its purpose.  .  .  .
> *Id.* at 361, 72 S.Ct. at 314.  See also *Herb v. Pitcairn*, 325 U.S. 77, 65 S.Ct. 954, 89 L.Ed. 1483 (1945).

In *Clearfield Trust Co. et al. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), the United States initiated a suit in federal District Court pursuant to 28 U.S.C.A. § 41(1), against Clearfield Trust Co. to obtain reimbursement for monies the Federal Reserve Bank had paid to the defendant on a check which was subsequently determined to be a forgery.  Clearfield defended claiming that "since the United States unreasonably delayed in giving notice of the forgery  .  .  ., it was barred from recovery under" Pennsylvania law.  The United States Supreme Court affirmed the Circuit Court of Appeals' reversal holding that federal, not state law, governed the "notice defense."

The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law. . . . The authority to issue the check had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws of Pennsylvania or any other state. . . . In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards.

\*      \*      \*      \*      \*      \*

The application of state law . . . would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states.

*Id.* at 366–367, 63 S.Ct. at 575.

A later decision in *Bank of America National Trust & Savings Association v. Parnell*, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956) may at first glance place some question on the applicability of *Clearfield* to an action between solely private litigants. The holding, however, is extremely narrow, and a close reading discloses that the preeminent position of federal law concerning the rights and duties of a federally created action has not been reduced. There, a diversity action was begun in the United States District Court for the Western District of Pennsylvania between solely private litigants [6] on a conversion of federal bonds claim. The Court affirmed the application of state law to govern which party had the burden of proving good faith or the lack thereof in a conversion action. At the same time, however, the Court recognized the limits of this ruling and that federal law would still govern the "interpretation of rights and duties" surrounding a federal instrument or obligation.

**6.** The Federal Reserve Bank of Cleveland was also an original defendant but the action against it was dismissed and no appeal therefrom taken.

We do not mean to imply that litigation with respect to Government paper necessarily precludes the presence of a federal interest, to be governed by federal law, in all situations merely because it is a suit between private parties, or that it is beyond the range of federal legislation to deal comprehensively with Government paper. We do not of course foreclose such judicial or legislative action in appropriate situations by concluding that this controversy over burden of proof and good faith represents too essentially a private transaction not to be dealt with by the local law of Pennsylvania where the transactions took place. Federal law of course governs the interpretation of the nature of the rights and obligations created by the Government bonds themselves. . . .

*Id.* at 34, 77 S.Ct. at 121.

This affirms the earlier statement in *Clearfield, supra* at 366–67, 63 S.Ct. at 574–75 that the nature of the litigants or parties does not lessen the control of federal law. The determinative factor is the origin and nature of the right that is being asserted.

The fact that the drawee is the United States and the laches those of its employees are not material. *Cooke v. United States*, 91 U.S. 389, 398, 23 L.Ed. 237. The United States as drawee of commercial paper stands in no different light than any other drawee. As stated in *United States v. National Exchange Bank*, 270 U.S. 527, 534 [46 S.Ct. 388, 389, 70 L.Ed. 717], "The United States does business on business terms." It is not excepted from the general rules governing the rights and duties of drawees . . . *Id.* at 369, 63 S.Ct. at 576.

■ While these cases deal with other federally created causes of action, there appears no reason to so limit the doctrine enunciated. The federal right created by the Truth in Lending Act (15 U.S.C.A. § 1640 in particular) against those who improperly disclose lending information, requires the same uniformity of application and protection from local animosities if it is to achieve its purpose of assuring a "meaningful disclosure of credit terms so that the consumer

will be able to compare more readily the various credit terms available to him   .   .   . ."   15 U.S.C.A. § 1601(a) (Supp. 1980).[7]

Having concluded that the rights conferred upon the consumer under the Truth in Lending Act are controlled by federal law, the only remaining question as to the choice of law is whether there is a basis for reaching a different result where those rights are asserted in a defensive rather than offensive posture. The factual predicate of the cases previously noted indicate that federal law governs even where the federal right is asserted in a defensive posture. See *Dice v. Akron, Canton & Youngstown R.R.*, *supra* (the validity of a written release as a defense to a Federal Employers' Liability claim is governed by federal law); *Clearfield Trust Co. v. United States, supra* (the propriety of the delay in giving notice of a forgery asserted as a defense to suit by the federal government for reimbursement of monies paid out is governed by federal law). We therefore conclude that the decision as to whether or not the TILA may be asserted defensively and whether it was barred in the instant case by the statute of limitations must be based upon federal law.

II. *May the TILA claim be asserted defensively.*

■ The second preliminary issue we must resolve is whether a defendant may assert a TILA claim defensively. While the United States Supreme Court has not decided the issue, those federal courts that have grappled with the problem have recognized the propriety of its use in a defensive posture.

In *Ballew v. Associates Financial Services Company of Nebraska*, 450 F.Supp. 253 (D.C.Neb.1976), a debtor initiated an action in federal court only to have the creditor counterclaim seeking the unpaid portion of the underlying debt obligation. In answer to that counterclaim, the debtor

7. "A state court considering a TILA claim, then is bound to give effect to the statute of limitations provided by the Act. Further it is bound to construe that limitation in light of the federal common law concerning statutes of limitation." Comment, "Truth-in-Lending and the Statute of Limitations," 21 Vill.L.Rev. 904, 915 n. 58 (1975–1976).

asserted a violation of the TILA. Not only was the TILA claim recognized as appropriate in a defensive posture, but it was allowed in the face of the statutory time bar. And even in *Basham v. Finance American Corp.*, 583 F.2d 918 (7th Cir. 1978), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979), a case heavily relied on by appellee, the court had no difficulty in finding that a TILA claim can be asserted defensively. Moreover, our research has failed to produce any federal decision which has reached a contrary conclusion on this issue. Therefore, we find that federal law allows the TILA claim to be raised defensively.

III. *Does the statute of limitations bar the debtor from asserting the TILA claim*

A. *The Statute of Limitation Does Not Preclude Recoupment.*

Appellant argues that the TILA claim is not barred by the "built-in" one year statute of limitations in that it is not an affirmative setoff but rather a recoupment which, being solely defensive in nature, remains vibrant as long as the underlying suit exists.

The doctrine of recoupment has been a recognized part of the federal common law since the Court's decision in *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1934). *See Rothensies v. Electric Battery Co.*, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946); *Pennsylvania R. Co. v. Miller*, 124 F.2d 160 (5th Cir. 1942) *cert. denied* 316 U.S. 676, 62 S.Ct. 1047, 86 L.Ed. 1750. *See also, Luckenbach S.S. Co. v. United States*, 312 F.2d 545 (2d Cir. 1963); *City of Grand Rapids v. McCurdy*, 136 F.2d 615 (6th Cir. 1943); *Multivision Northwest, Inc. v. Jerrold Electronics Corp.*, 356 F.Supp. 207 (N.D.Ga.1972). The Supreme Court's discussion of the doctrine, however, has been very limited and the decisions rendered only involved the area of tax liability.

In *Bull v. United States*, a decedent's estate was assessed a tax by the United States government which was subsequently determined to be in excess of the actual liability, yet no action could be brought by the estate for a refund because the statute of limitations had run. In a later

proceeding brought by the government against the estate to obtain a tax owed by the decedent for income received as proceeds of a partnership agreement, the estate demanded that the excess tax previously paid be credited against the income tax liability. In allowing the estate's claim, the Court explained the effect of a recoupment on a statute of limitation.

If the claim for income tax deficiency had been the subject of a suit, any counter demand for recoupment of the overpayment of estate tax could have been asserted by way of defense and credit obtained notwithstanding the statute of limitations had barred an independent suit against the government therefor. This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely. *Id.* at 262, 55 S.Ct. at 700.

In an attempt to delineate the boundaries of recoupment, the Court in *Roethensies v. Electric Battery Co., supra,* juxtaposed the factual setting in that case with the one presented in *Bull.* There the government treated a refund received by a business concern for excise taxes paid by the company on the sale of its wares as income because the company had previously counted it as a deduction. After paying the additional tax, the company filed suit, asserting in the alternative that the additional tax be credited as a recoupment against the excise tax paid for previous periods. The Supreme Court rejected the contention, holding that the bar of the statute applied and pointed to *Bull* as an appropriate application of the recoupment doctrine. There "a single transaction constituted the taxable event claimed upon and the one considered in recoupment." The "one taxable event was receipt by executors of a sum of money." *Rothensies v. Electric Battery Co., supra* 329 U.S. at 299, 300, 67 S.Ct. at 272. While in *Rothensies* the taxable event claimed upon for recoupment and the one which is part of the main action arose out of different transactions.

A further explanation of the doctrine under federal law can be found in *Pennsylvania R. Co. v. Miller, supra* at 162.

The doctrine of recoupment was derived from the civil law, and was adopted as a part of the common law. Under it a defendant is entitled to claim, by way of deduction, all just allowances or demands, accruing to him in respect of the same transaction that forms the ground of the action. This is not a set-off . . . in the strict sense, because it is not in the nature of a cross demand, but rather it lessens or defeats any recovery by the plaintiff. It goes to the existence of plaintiff's claim, and is limited to the amount thereof. . . .

Recoupment goes to the foundation of the plaintiff's claim; it is available as a defense, although as an affirmative cause of action it may be barred by limitation. The defense of recoupment, which arises out of the same transaction as plaintiff's claim, survives as long as the cause of action upon the claim exists. It is a doctrine of an intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced.[8]

8. *Further explication of the distinctions between counterclaim setoff and recoupment is provided in American Jurisprudence.*

   Subject to statutory limitations, a counterclaim includes every kind of cross demand existing in favor of a defendant against the plaintiff in the same right. . . . It is frequently broader and more extensive than setoff or recoupment, or it is the equivalent of the two combined, or includes both.
   20 Am.Jur.2d, Counterclaim, Recoupment, Etc., § 3, p. 229.
   . . . (A) setoff is . . . a counterdemand which the defendant holds against a plaintiff, arising out of a transaction extrinsic to the plaintiff's cause of action; . . .
   20 Am.Jur.2d, Counterclaim, Recoupment, Etc., § 2, pp. 228–9.
   . . . (A) demand pleaded by way of a setoff, . . . is regarded as an affirmative action . . . and therefore, . . . is subject to the operation of the statute of limitations, and is unavailable if barred.
   51 Am.Jur.2d, Limitation of Actions, § 78, p. 657.
   Recoupment differs from setoff mainly in that the claim must grow out of the identical transaction that furnishes the plaintiff's cause of action and, being in the nature of a claim of right to reduce the amount demanded, can be had only to an extent suffi-

### B.   Was This An Attempted Recoupment.

To date, the Supreme Court has not decided whether the TILA counterclaim constitutes setoff or recoupment. While at first blush the decisions rendered on the matter by the circuit courts appear conflicting, a close reading finds them reconcilable and holding that the TILA counterclaim is in the nature of a recoupment.

In *Ballew v. Associates Financial Services Company of Nebraska, Inc.*, Memorandum and Order No. CV 75–L–119 filed August 18, 1976 (D.C.Neb.), C.C.H.Cons.Cred. Guide ¶ 98,327,[9] the court concluded that the TILA counterclaim was in the nature of recoupment and as such was not barred by the statute of limitations.

>      .   .   .   A Truth in Lending Act claim, although it may involve certain additional facts or a different perception thereof, nevertheless involves the same transaction, that transaction resulted in the note upon which the defendant now seeks recovery.   It is from that same document that the plaintiff's counterclaim for the Truth in Lending Act violation emerges.   At this point, I must accept as true the plaintiff's assertion that the 1974 note that is the subject matter of the defendant's claim is a

> cient to satisfy the plaintiff's action.   In other words, recoupment goes to the justice of the plaintiff's claim, and no affirmative judgment can be had thereon, while setoff is not necessarily confined to the justice of such particular claim, and an affirmative judgment may be had for any amount to which the defendant establishes his right over and above the amount to which the plaintiff has proved he is entitled.

> Recoupment is not merely a cross action, as is a setoff.   It does not confess the indebtedness alleged in the complaint, as is understood by a setoff, but its proposition is that the plaintiff's claim is based on a particular contract or transaction and that to entitle the plaintiff to the sum claimed, he must prove compliance with certain obligations of the contract; that he has failed to do so; and therefore that the defendant has been so damaged in the transaction that the plaintiff is not entitled to recover.

> 20 Am.Jur.2d, Counterclaim, Recoupment, Etc., § 11, pp. 235–236.

**9.**   This was a decision by the District Court on defendant's motion to strike plaintiff's counterclaim.   The decision of this Court on the merits of plaintiff's claims is reported at 450 F.Supp. 253 (D.C.Neb. 1976).

renegotiation of the 1972 note. As such, it may well be a recoupment of monies due the defendant and should properly be examined so that judgment may be rendered so as to do justice in view of the transaction as a whole.

Further support for the proposition that the TILA claim and the corresponding debt arise from the same transaction may be found in *Plant v. Blazer Financial Services, Inc. of Georgia*, 598 F.2d 1357 (5th Cir. 1979). The case applies "the same transaction test" to a TILA action in federal court to determine whether the creditor's counterclaim, alleging default in the loan by debtor, is compulsory or permissive for purposes of Fed.R.C.P. 13(a). The two claims were deemed to have arisen from "a single aggregate of operative facts, the loan transaction, gave rise to both the plaintiff's and defendant's claim." *Id.* at 1361.[10]

Appellee relies heavily upon the recent rulings of the United States Court of Appeals for the Seventh Circuit for its assertion that the TILA claim is not in the nature of recoupment. A close reading of the decisions reveals a misplaced reliance. The court in *Basham v. Finance American Corp.*, 583 F.2d 918 (7th Cir. 1978), *cert. denied*, 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979) disallowed a TILA counterclaim by the debtors because the statute of limitation had run. Yet the decision rested on the fact that the debtors sought "affirmative damages" and not a mere reduction in their loan obligation, and thus was not recoupment.

> We express no opinion concerning the availability of a counterclaim after the limitation period where debtors would seek to have the recovery by creditor reduced by the amount of actual damages sustained by debtors in, for example, overpayment of finance charges. . . . Certainly, however, such a claim is much closer to the concept of "recouping" something unlawfully taken by the creditor.

*Id.* at 927–928 n. 16.

10.  *But see Spartan Grain and Mill Co. v. Ayers et al.*, 581 F.2d 419 (5th Cir. 1978).

The more recent decision by that same court urged by appellee, *Smith et al. v. No. 2 Galesburg Crown Finance Corporation et al.*, 615 F.2d 407, (7th Cir. 1980) merely rejects the assertion of a TILA counterclaim as time barred "for the reasons stated in the *Basham* opinion." *Id.* at 410. Since no further explanation is given, there is no reason to conclude that this decision goes any further than *Basham* towards a total rejection of the concept.

The federal decisions [11] noted dictate a finding that the TILA claim arose out of the same transaction as the underlying debt and as such is a recoupment and not a setoff.[12] And this is appropriate for the disclosure requirement is a vital and integral part of the loan contract. It is in fact the cost of the loan (or finance charge) that is often determinative from the borrower's perspective. This information goes to the very heart of the bargain and, if not properly set forth, the borrower's position is weakened, his choice made with less than adequate information, and good faith which lies at the foundation of all commercial transactions is offended. Often the debtor does not know of the improper disclosure until the creditor's action forces legal

**11.** While this Court is not bound by decisions of sister state tribunals in this matter, a review of these rulings reveals the emergence of a finding that the TILA should be permitted beyond the statutory period as a recoupment. *Household Finance Corp. v. Pugh et al.*, 288 N.W.2d 701 (Minn.1980); *Household Finance Corp. v. Hobbs*, 387 A.2d 198 (Del.Super.Ct.1978); *Streets v. M.G.I.C. Mortgage Corp.*, 378 N.E.2d 915 (Ind.App.1978); *Empire Finance Company of Louisville, Inc. v. Ewing*, 558 S.W.2d 619 (Ky.App.1977); *Continental Acceptance Corp. v. Rivers*, 50 Ohio App.2d 338, 363 N.E.2d 772 (1976); *Wood Acceptance Co. v. King*, 18 Ill.App.3d 149, 309 N.E.2d 403 (1974).

State court decisions disallowing the counterclaim include *Shaw v. First National Bank of Chicago*, 143 Ga.App. 416, 238 S.E.2d 719 (1977); *Hewlett v. John Blue Emp. Federal Credit Union*, 344 So.2d 505 (Ala.Civ.App.1976); *Hodges v. Community Loan & Investment Corp. of North Georgia*, 133 Ga.App. 336, 210 S.E.2d 826 (1974), *re'v.* in part on other grounds, 234 Ga. 427, 216 S.E.2d 274 (1975).

**12.** ". . . The federal rule that a claim asserted by way of recoupment survives as long as the plaintiff's cause of action . . . is part of the package of federal law surrounding the 1-year limitation provided by the (TILA) Act, and hence should be applied by the state court." 21 Vill.L.Rev. 904, 915 n. 58 (1975–1976).

assistance. The superior position of the lender in today's market may cause a consumer to be so elated over the ability to obtain the loan proceeds, that detailed analysis of the cost if not properly disclosed would be inadvertently overlooked. Further, a fear that the loan may be "called in" after a period of faithful payments or of the lender's hostile retaliation often renders the debtor incapable of initiating the action. Finally, by allowing the statute of limitation to preclude a TILA counterclaim, instead of encouraging prompt action on claims, we would ironically "discourage creditors from prompt vindication of their contractural rights." [13] Thus, the TILA counterclaim, asserted in such a situation, becomes purely defensive in nature, "founded upon an equitable reason, inhering in the same transaction," which explains "why the plaintiff's claim in equity and good conscience should be reduced." *Pennsylvania R. Co. v. Miller, supra* at 162.[14]

**13.** 21 Vill.L.Rev. 904, 922 n. 113 (1975–1976).

**14.** Consistent with this view and analogous thereto is the doctrine in federal law of circumventing a "built-in" statute of limitations where its application as a bar would frustrate the legislative intent. *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965); *United States v. Western Pacific Railroad Co. et al.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The Court in Western Pacific, holding that the two year statute of limitations contained in the Interstate Commerce Act, 49 U.S.C.A. § 16(3)(a), was not permitted to bar referral to the Interstate Commerce Commission of questions raised in defense after the run date wrote:

. . . More important, the basic policy behind statutes of limitations has no relevance to the situation here. The purpose of such statutes is to keep stale litigation out of the courts. They are aimed at lawsuits, not at the consideration of particular issues in lawsuits. Here the action was already in court and held to have been brought in time. To use the statute of limitations to cut off the consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation. We think it would be incongruous to hold that once a lawsuit is properly before the court, decision must be made without consideration of all the issues in the case and without the benefit of all the applicable law. If this litigation is not stale, then no issue in it can be deemed stale.

352 U.S. at 72, 77 S.Ct. at 169.

In light of the purpose enunciated in the TILA, *see* 15 U.S.C.A. § 1601 (Supp.1980), to protect the prospective borrower, it becomes inappropriate for the statute of limitations to inhibit the achievement of

In summary, the federal decisions dictate a finding that the Truth in Lending Act counterclaim, as it is presented in the instant appeal, constitutes recoupment and not an affirmative setoff. The one year statute of limitation, 15 U.S.C.A. § 1640(e), therefore may not bar its assertion.

Accordingly, we reverse the order of the Superior Court and remand the matter to the trial court with instructions that appellant be permitted to present evidence on their Truth in Lending Act counterclaim.

MANDERINO, J., did not participate in the consideration of this case.

ROBERTS, J., filed a concurring opinion.

ROBERTS, Justice, concurring.

Unlike the majority, I believe this private litigation, which in no respect affects substantial rights or duties of the United States government, is governed not by federal but by state common law. See *Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). I am, however, of the view that appellant can present appellees' alleged Truth in Lending Act violations by way of recoupment. As Standard Pennsylvania Practice points out,

"Recoupment is the act of rebating or recouping a part of a claim upon which one is sued by means of a legal or equitable right resulting from a counterclaim arising out of the same transaction. It is the right of the defendant to claim in the same action damages from the plaintiff, either because he has not complied with some cross obligation of the contract upon which he sues, or because he has violated some duty which the law imposed upon him in the making or performance of that contract . . . ."

4 Std.Pa.Prac. Ch. 15 § 2 pp. 391–92 (1955) (footnotes omitted). Thus, I would reverse the order of the Superior Court and remand the proceedings to permit appellant to present the alleged Truth in Lending Act violations.

the desired end where the TILA claim is asserted defensively. A parallel situation was denounced in Western Pacific.