464 A.2d 1336

**Henry J. ITRI and Joanne V. Itri, his wife, Appellants,**

**v.**

**EQUIBANK, N.A.**

Superior Court of Pennsylvania.

Argued April 26, 1983.

Filed Aug. 19, 1983.

Lee R. Golden, Pittsburgh, for appellants.

Sidney R. Finkel, Pittsburgh, for appellee.

Before ROWLEY, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal by the appellants, Henry J. and Joanne V. Itri, from the Order of the Court of Common Pleas of Allegheny County sustaining appellee's, Equibank's, preliminary objections (in the nature of demurrers and jurisdictional grounds) to their Complaint in Trespass. We reverse and remand for proceedings consistent with this Opinion.

■ Since review is sought of the sustainment of the preliminary objections in the nature of demurrers, the well-pleaded factual allegations set forth in the Complaint are to be regarded as true for purposes of review. *Carlino v. Whitpain Investors*, 499 Pa. 498, 453 A.2d 1385 (1982). The facts as alleged by appellants' Complaint establish the following: In 1973, appellants' Pennsylvania based corporation, Itri Construction Co., of which Henry Itri was President, began to engage in banking transactions with (Douglas McAdams, William Roderus, H.P. Pernisek and Scott Gray) duly authorized agents of appellee. The transactions consisted of, *inter alia*, borrowing money with payments to be made in accordance with installment notes and demand notes.

On or about September 21, 1975, appellee (in particular William Roderus) became aware that Henry Itri had suffered a heart attack, and, as a result, would not be able to continue operating the construction business. Thereafter, on or about May 27, 1976, a 1975 commercial note drawn on the appellee in the amount of $10,000 was satisfied by the appellants borrowing $12,700 from the same banking institution and executing another note to evidence the debt. This was the first time that the appellant-wife became jointly liable with the appellant-husband to the appellee. After the passage of almost two years (September 9, 1978), appellants paid the outstanding balance owing on the May, 1976 personal loan by securing a new advancement ($10,-000), evidenced by a note, from appellee, which was to be used for personal rather than commercial expenses. There was no dispute between the parties that the $10,000 note was the primary obligation of the appellants, as distinguished from the corporation, and was secured by an insurance policy on the life of the appellant-husband, issued by General American Life Insurance and owned by appellant-wife. Lastly, it was agreed that repayment was to be made in monthly installments "and that the full amount of said note was not to be demanded unless [appellants] defaulted in making a monthly payment." (*See* Appellants' "Complaint in Trespass," Point 19)

The last portion of appellants' Complaint consists of sixteen (16) counts which allege, in pertinent part, the following:

## COUNT I

20. On or about March 12, 1979, William Roderus, agent of Defendant, phoned Plaintiffs requesting a financial statement and said life insurance policy with General American Life Insurance Company to forward to the Downtown office at the request of agent, H.P. Pernisk; and this request for said life insurance was harassment and/or abuse ....

## COUNT II

21. On or about March 13, 1979, Plaintiffs met with William Roderus, agent of Defendant, at Defendant's Monroeville office, and William Roderus agreed that it would be satisfactory to rewrite said $10,000 note into a formal sixty (60) month installment loan note with credit life insurance in lieu of said General American Life Insurance policy, but William Roderus stated that he understood a judgment would be entered through the directions of the Downtown office; said judgment to be entered against Plaintiffs.

22. At said time and place referred to in Paragraph 21 above, William Roderus, agent of Defendant, stated that he was no longer allowed to do business with Plaintiffs or any companies with which they were associated, . . . .

## COUNT III

23. On or about March 16, 1979, Defendant unlawfully confessed judgment upon said $10,000 note at No. GD 79–6672, in violation of the agreement between Plaintiffs and William Roderus when Plaintiffs' monthly payments were current, . . . .

## COUNT IV

24. . . .

25. On or about April 11, 1979, Plaintiffs received a letter from H.P. Pernisek, agent of Defendant, regarding said $10,000 note and said judgment without seeking a Court's permission and/or without seeking the permission of Plaintiffs' attorney . . . who H.P. Pernisek should have known was involved in said judgment [since on or about April 6, 1979 the attorney filed a petition to open and/or strike said judgment], . . . .

## COUNT V

26. On or about May 30, 1979, Plaintiffs met with H.P. Pernisek and Scott Gray, agents of Defendant, at H.P.

Pernisek's request in Defendant's Oliver Plaza Building offices with reference to said $10,000 note.

27. At the time and place stated in Paragraph 26 above, H.P. Pernisek, agent of Defendant, knew Plaintiffs' General American Life Insurance policy was a term policy without cash value and that a copy of said policy was on file with Defendant.

28. At the time and place stated in Paragraph 26 above, H.P. Pernisek, agent of Defendant, refused to accept Plaintiffs' monthly payment on said $10,000 note until such time as said American General Life Insurance policy was turned over to Defendant, which conduct constituted harassment and/or abuse, . . . .

## COUNT VI

29. . . .

30. At the time and place stated in Paragraph 26 above, H.P. Pernisek, agent of Defendant, communicated with Plaintiffs without seeking a Court's permission and/or without seeking the permission of Plaintiffs' attorney . . . who H.P. Pernisek should have known, . . . .

## COUNT VII

31. At the time and place stated in Paragraph 26 above, Scott Gray, agent of Defendant, left the meeting room under the pretense of searching for records requested by Plaintiffs and instead telephoned General American Life Insurance Company, which phone call was a third party communication, . . . .

## COUNT VIII

32. The conduct referred to in Paragraph 31 above was calculated to harass and abuse Plaintiffs, . . . .

## COUNT IX

33. At the time and place stated in Paragraph 26 above, H.P. Pernisek, agent of Defendant, attempted to coerce

and threaten Plaintiffs with action on said $10,000 note unless they settled another matter involving G.I. Partners, one, Theodore Gelet, and Plaintiff, HENRY J. ITRI, which conduct constituted additional harassment and abuse, . . . .

## COUNT X

34. ...

35. ...

36. On or about July 11, 1979, Scott Gray, agent of Defendant, contacted the office in Pittsburgh of Plaintiffs' life insurance agent, Dominic Cerniglia, for information concerning and a copy of said life insurance policy, . . . .

## COUNT XI

37. The conduct referred to in Paragraph 36 above was committed with the intent of harassment and/or abuse upon Plaintiffs, . . . .

## COUNT XII

38. ...

39. On or about July 11, 1979, Scott Gray, agent of Defendant, telephoned the General American Life Insurance Company office in St. Louis to make inquiry regarding said life insurance policy, and such inquiry was beyond the scope of information needed by an assignee [Defendant was so designated by the Plaintiffs] of such a policy, . . . .

## COUNT XIII

40. The conduct referred to in Paragraph 39 above was calculated to harass and or abuse Plaintiffs.

## COUNT XIV

41. ...

42. On July 31, 1979, Scott Gray, agent of Defendant, contacted the office in Pittsburgh of Plaintiffs' life insurance agent seeking information concerning said life insurance policy, . . . .

## COUNT XV

43. The conduct referred to in Paragraph 42 above was calculated to harass and/or abuse Plaintiffs, . . . .

## COUNT XVI

44. Paragraphs 20 through 43 are incorporated herein as if fully set forth at length.

45. The conduct referred to above constitutes a pattern of conduct and bad faith conduct, which conduct is outrageous and was committed with the intent to harass and/or abuse Plaintiffs, in violation of 15 U.S.C., Section 1692(d) and 1692(f), and in violation of the law of the Commonwealth of Pennsylvania.

46. As a direct and proximate result of Defendant's conduct as aforementioned, Plaintiff, HENRY J. ITRI, has suffered the following injuries:

A. Anxiety—hypertension;

B. Chest pains;

C. Loss of sleep; and

D. Shock.

47. As a direct and proximate result of Defendant's conduct as aforementioned, Plaintiff, JOANNE V. ITRI, has suffered the following injuries:

A. Loss of sleep;

B. Anxiety; and

C. Shock.

48. As a direct and proximate result of Defendant's conduct as aforementioned, which conduct was outrageous, malicious and wanton, Plaintiffs have suffered the following damages:

A. Invasion of privacy;

B. Marital discord and instability;

 C. Pain, suffering inconvenience; and

 D. Emotional distress.

WHEREFORE, Plaintiffs demand judgment against the Defendant in a sum in excess of $10,000 as follows:

 A. For compensatory damages;

 B. For statutory damages; and

 C. For punitive damages.

We note that the first 15 counts, of appellants' 16-count Complaint, attribute the appellee and/or its agent(s) with the commission of various acts, *all of which concluded with the phraseology that the complained of acts were* "in violation of 15 U.S.C., Section 1692" of the Fair Debt Collection Practices Act. (*See* Appellants' "Complaint in Trespass," Counts I–XV) The last count, "COUNT XVI," asserts both a federal and state cause of action.[1] Nonetheless, the trial court, by Order dated August 4, 1980, sustained appellee's preliminary objections "as to the jurisdiction of the ... Court [of Common Pleas of Allegheny County, Civil Division,] to hear and rule upon the merits of appellants' Complaint." In an accompanying Opinion, the trial judge (Zappala, J.) examined the federal statute in question (15 U.S.C.A. § 1692k(d)) and its counterpart in this Commonwealth (42 Pa.C.S.A. § 931), i.e., in terms of the jurisdictional issue, and concluded:

> "Clearly, [in 15 U.S.C.A. § 1692k(d)], then, Congress intended concurrent jurisdiction between the federal and state court systems provided that the state legislature granted to its courts the power to adjudicate this type of federal claim. [After reproducing 42 Pa.C.S.A. § 931, the trial judge went on to hold:]

* * * * * *

> It is clear, then, that the General Assembly intended that our [Commonwealth] courts have jurisdiction over those claims which the General Assembly has provided legislative authority to act, or those claims which the courts

---

1. Because of the result reached instantly, we find it inappropriate to decide whether either cause of action presents a viable claim entitling appellants to the damages sought.

have assumed the power to act through the common law. Review of our statutes fails to establish any authority for the enforcement of the Fair Debt Collection Practices Act. Furthermore, nowhere in our statutes is there any legislation comparable to that of the Act. Accordingly, this Court acted properly in sustaining the preliminary objections in that the Court does not have the power to adjudicate this federal claim.

The Court entered an Order on August 4, 1980, sustaining the preliminary objections of the defendant and dismissing the Complaint. That Order is adopted herein and incorporated with this opinion." (Trial Court Opinion at 2-3)

As can be expected, the appellee echoes the sentiments expressed *supra* and argues that, "As the [trial] court did not have jurisdiction over the claims involving the alleged violations of the Act, the [trial] court necessarily had to dispose of the entire complaint due to the lack of jurisdiction." (Appellee's Brief at 4) Just as predictably, appellants argue to the contrary. However, interestingly enough, neither party to the litigation nor the trial judge cites any case law to substantiate their respective positions. Rather, each merely recites the statutory law in question, gives his interpretation of same and, then, ends his discussion with a conclusionary statement couched in terms supportive of their view.

Because of the dearth of relevant information presented to this Court, we have had to rely upon our own research. What we have uncovered undermines the trial court's and appellee's joint stance.

To start with, appellants' federal cause of action is premised upon allegations that the appellee and/or its agent(s) has violated various provisions of the Fair Debt Collection Practices Act (FDCPA). 15 U.S.C.A. § 1692 *et seq.* Next, from a historical prospective, we observe that:

The FDCPA was enacted in 1977 as an amendment to the Consumer Credit Protection Act "to protect consumers from a host of unfair, harassing, and deceptive debt

collection practices without imposing unnecessary restrictions on ethical debt collectors." Consumer Credit Protection Act, Sen.Rep. No. 95–382, 95th Cong., 1st Sess. 1–2, *reprinted in* [1977] U.S.Code Cong. & Admin.News, pp. 1695, 1696. Among the specific practices prohibited are threats of violence, obscene language, the publishing of "shame lists," harassing or anonymous telephone calls, impersonating a government official or attorney, misrepresenting the consumer's legal right, simulating court process, obtaining information under false pretenses, collecting more than is legally owing, and misusing postdated checks. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f. The statute does not apply to persons or businesses collecting debts on their own behalf. *Id.* § 1692a(4). It is directed to those persons who are engaged in business for the principal purpose of collecting debts. *Id.* § 1692a(6). In order to prevent collection action against the wrong person or against a debtor who has already paid, the Act requires the debt collector to validate the debt. *Id.* § 1692g. Within five days after the initial communication, the debt collector must send the consumer written notice stating the name of the creditor and the amount owed. *Id.* § 1692g(a)(1)–(2). If the consumer disputes the validity of the debt within 30 days, the debt collector must cease collection until s/he sends the consumer verification. *Id.* § 1692g(b). Congress viewed the statute as primarily self-enforcing. Sen.Rep. No. 95–382 at 5, *reprinted in* [1977] U.S.Code Cong. & Admin.News at 1699. The statute provides for suit by the aggrieved consumer who may recover actual damages, attorney's fees and costs, and additional damages to be assessed as the court deems appropriate, not exceeding $1,000. 15 U.S.C. § 1692k(a).

*Staub v. Harris*, 626 F.2d 275, 276–277 (3rd Cir.1980).

■ Furthermore, it must be noted that a plaintiff bears the unquestioned burden of establishing jurisdiction where the question of the sufficiency of his jurisdictional allegations is before the court on a motion to dismiss. *See Kizer*

*v. Finance America Credit Corp.*, 454 F.Supp. 937, 938 (N.D.Miss.1978).

Having established a framework within which to understand the FDCPA, we may now turn our attention to the crux of the case, i.e., whether the court of common pleas has subject-matter jurisdiction over the matter in controversy under subsection (d) of Section 1692k, which reads:

§ 1692k. Civil Liability

\*　\*　\*　\*　\*　\*

Jurisdiction

(d) An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

15 U.S.C.A. § 1692k(d).

The appellee filed preliminary objections alleging, *inter alia*, that the Court of Common Pleas of Allegheny County had no jurisdiction to hear any cause of action under the FDCPA since "[t]he statutes of the Commonwealth d[id] not vest this Court with the requisite jurisdiction to entertain the Complaint of Plaintiffs." (Appellee's "Preliminary Objections," Point 1) This position was embraced by the trial court and reasserted by the appellee before this Court. However, we are not dissuaded by such an argument, especially in the absence of supportive authority, for several reasons.

First, those (federal) courts which have had occasion to rule upon the meaning of subsection (d) of Section 1692k have stated that: "The language is to be construed as a concurrent grant of jurisdiction to U.S. district and state courts. *See* S.Rep. No. 382, 95th Cong., 1st Sess. 8 (1977), *reprinted in* 1977 U.S.Code Cong. & Ad.News 1695, 1702; *Peterson v. United States Accounts, Inc.*, 638 F.2d 1134, 1135–36 (8th Cir.1981) (dictum)." *In re Scrimpsher*, 17 B.R. 999, 1004 n. 8 (Bkrtcy.N.D.N.Y.1982).

Second, the Pennsylvania Supreme Court, in ruling upon the propriety of a Commonwealth court acting as the forum for the enforcement of a federal law (Truth-In-Lending Act)[2] that contained language in its jurisdiction section *identical* to that in FDCPA, held:

> Here [the Truth-In-Lending Act] 15 U.S.C.A. § 1640(e), *supra,* specifically permits any court of "competent jurisdiction" to entertain the action. State courts thereby have the authority to hear such claims.

*Household Consumer Discount Co. v. Vespaziani,* 490 Pa. 209, 212 n. 5, 415 A.2d 689, 691 n. 5 (1980).

 Lastly, we need only look to this Court's decisions to buttress the contention that, in the case here, 15 U.S.C.A. § 1692k(d) would support a suit in either state or federal court. To-wit, in *Harrington v. Philadelphia City Employees Federal Credit Union,* 243 Pa.Super. 33, 364 A.2d 435 (1976), this Court had the opportunity to remark upon the viability of bringing a suit in either federal or state court under the Federal Credit Union Act. 12 U.S.C.A. § 1751 *et seq.* We first found that the Act permitted suit to be commenced "in any court of law or equity, State or Federal." 12 U.S.C.A. § 1789(a)(2). Thereafter, we made remarks which are quite appropriate to the case at bar; *viz.:*

> There is no doubt that in the instant case, the above language would support a suit in either state or federal court.

We also note that concurrent jurisdiction such as that here, is by no means a new and novel concept. As the

**2.** 15 U.S.C.A. § 1601 *et seq.* The jurisdiction portion of the Truth-In-Lending Act was interpreted by this Court as follows:

State courts nevertheless have concurrent jurisdiction to hear disputes relating to the Truth-In-Lending Act. Section 130(e) of the Act provides that, "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction ...." 15 U.S.C. § 1640(e). *See Lewis v. Delta Loans, Inc.,* 300 So.2d 142 (Miss.1974).

*Household Consumer Discount Co. v. Vespaziani,* 255 Pa.Super. 367, 372 n. 4, 387 A.2d 93, 95 n. 4 (1978), rev'd on other grounds, 490 Pa. 209, 415 A.2d 689 (1980).

United States Supreme Court stated in *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 507–08, 82 S.Ct. 519, 522, 7 L.Ed.2d 483 (1962):

> "We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule."
>
> There is nothing in the present statute making federal jurisdiction exclusive in all instances, nor is there any particular reason for restricting jurisdiction.

*Id.,* 243 Pa.Superior Ct. at 41–42, 364 A.2d at 440.

Instantly, as in *Harrington,* we see no reason, given the federal statute in question and the manner in which it has been construed, to restrict resolution of appellants' claims to the federal forum. For, as stated quite aptly by this Court in *Harrington,* "There is nothing in the present statute making federal jurisdiction exclusive in all instances, nor is there any particular reason for so restricting jurisdiction." *Id. Accord DiAntonio v. Pennsylvania State University,* 455 F.Supp. 510, 512 (M.D.Pa.1978); *cf. Salatino v. Pennsylvania Nurses Association,* 293 Pa.Super. 336, 439 A.2d 140 (1981) (federal labor act did not preempt subject matter jurisdiction over case involving alleged breach of union's duty of fair representation of its members, and, thus, common pleas court had jurisdiction to hear the dispute).

■ Since neither side presents any evidence to indicate that a cause of action identical to that being appealed from here was instituted in federal court, *see Wolgin v. State Mutual Investors,* 265 Pa.Super. 525, 402 A.2d 669 (1979), we find the foregoing discussion dispositive of the issue (jurisdictional controversy) before this Court. For the reasons stated above, appellants' Complaint in Trespass is reinstated and the matter is to proceed in the court below as

though no preliminary objections were sustained on behalf of the appellee.[3]

Order is reversed and the case is remanded for proceedings consistent with this Opinion. Jurisdiction is relinquished.

3. We will not rule upon the other assertions raised by the appellants or appellee in their brief to this Court, in light of the ruling just made, for to do so would be the equivalent of issuing an advisory opinion. As we stated in a similar context, "This Court is not in the practice of rendering advisory opinions on questions which have not been fully briefed and argued below [so as to give the lower court the first opportunity to resolve the dispute]; to do otherwise, would be presumptive of the lower court's determination on remand." *Commonwealth v. Hamlin*, 302 Pa.Super. 86, 93 n. 2, 448 A.2d 538, 542 n. 2 (1982); *see also Mt. Lebanon v. County Board of Elections*, 470 Pa. 317, 368 A.2d 648 (1977); *Pa. Public Utility Commission v. County of Allegheny*, 415 Pa. 313, 203 A.2d 544 (1964). However, we do advise that the following cases, although not an exhaustive list of matters to be reviewed in resolving the issues raised by appellants' Complaint in Trespass, should be examined to ascertain some insight into the scope of, and the remedies afforded by, the FDCPA. *See Peterson v. United Accounts, Inc.*, 638 F.2d 1134 (8th Cir.1981); *Staub v. Harris*, 626 F.2d 275 (3rd Cir.1980); *Kizer v. Finance America Credit Corp.*, 454 F.Supp. 937 (N.D.Miss.1978). Also, the FDCPA should be read to facilitate a resolution of the controversy.