Charles **JACKSON**

v.

**The S. S. KINGS POINT, her engines, tackle, apparel and furniture, etc., and Central Gulf Steamship Corporation.**

**No. 7583.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 24, 1967.

Clifton S. Carl, Garrett & Carl, New Orleans, La., for libelant.

Sam A. LeBlanc, III, Adams & Reese, New Orleans, La., for respondents.

---

HEEBE, District Judge:

Libelant, a longshoreman employed by Mid-Gulf Stevedores, Inc., here sues the SS Greens Point[1] and its owner for injuries he received while loading cargo aboard the vessel. He alleges negligence and unseaworthiness as grounds for recovery. He claims that the wrong winch boom, the forward instead of the after, was being used in the loading operation, which was conducted solely by the employees of Mid-Gulf Stevedores, and that a tagline on the boom became pinned under a pontoon causing a hook to swing striking his head. Respondents moved for summary judgment contending that this constitutes "operational negligence" for which the ship and its owner are not liable.

Prior to Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967), the ship and its owner were not liable for injuries sustained by a longshoreman which were caused solely by the negligence of other longshoremen aboard a seaworthy vessel. Liability was imposed only for injuries caused by the "unseaworthiness" of the vessel. "Unseaworthiness," however, has been a constantly expanding doctrine. Its uninhibited extension has been motivated by a liberal judicial policy, possibly contrary to congressional intent, of affording greater protection to longshoremen at the shipowner's expense. As a result of this expansion, distinguishing between negligence, for which recovery by the longshoreman against the shipowner is denied, and unseaworthiness, for which recovery is allowed, is becoming an increasingly difficult task. The distinction upon which recovery hinges is said to depend upon whether an "act" or a "condition" caused the injury. This distinction has become so tenuous that its application in borderline cases, such as this, is exceedingly difficult; and it has resulted in the exertion of an undue amount of judicial labor in painful and frustrating attempts to draw the true line. The confusion generated in trying to apply the distinction has resulted in inconsistent decisions. This dissatisfaction is compounded in that the true scope of "unseaworthiness" is only being prostituted when, in order to effectuate the prevailing liberal judicial attitude of protecting longshoremen, the imprimatur of "unseaworthiness" is stamped upon that which is traditionally and more properly known as negligence. Indeed, the quest for the true guideline often seems to be nothing more than a semantic battle. Imagine a longshoreman negligently spilling a container of hot liquid onto a fellow worker, injuring him. Recovery may be denied. But a third longshoreman, falling on the then slippery deck *a second later*, could recover. We seriously question whether this is justice. We would certainly welcome a reappraisal of the law.

It may be that this reappraisal is to be found in *Mascuilli*. In that decision the Supreme Court may have laid to rest the doctrine of "operational negligence" and sanctioned the doctrine of "instantaneous unseaworthiness," so that a longshoreman may now recover for the negligence of his fellow workers even though no unseaworthy "condition" has been created. A number of lawyers and judges feel that this is what *Mascuilli* held. The Second Circuit indicated in Candiano v. Moore-McCormack Lines, Inc., 2d Cir., 382 F.2d 961, August 1, 1967, *in dicta*, that it shares this belief. We, too, are inclined to accept this as *Mascuilli's* effect. This would undoubtedly add certainty and achieve consistency. The trend has been proceeding to this result for some time. Indeed, the expanded notion of "unseaworthiness" has already engulfed within its distant horizons all negligence save perhaps the most volatile. The effect of such a decision would be to allow "unseaworthiness" to resume its former and more proper bounds as negligence would no longer need to proceed under the guise

---

1. The libelant originally erroneously filed suit against the SS Kings Point. This error was subsequently detected and the SS Greens Point was made respondent in an amended petition.

of "unseaworthiness." However, we are plagued by a certain amount of doubt in light of the authorities relied upon by the Supreme Court in *Mascuilli* and by the fact that *Mascuilli* was only a per curiam opinion of the briefest possible nature. Consequently, we are not prepared to hold, at this time, that this was *Mascuilli's* effect.

A less extreme interpretation of *Mascuilli* is that rather than obliterating the unseaworthiness-negligence dichotomy as suggested above, the Supreme Court in maintaining this distinction has extended unseaworthiness to its furthest possible limit so that unseaworthiness will be *presumed* to exist whenever there is any question at all as to whether or not a "condition" caused the longshoreman's injuries. If this is *Mascuilli's* effect, then recovery by the longshoreman may be denied only when it is crystal clear that a negligent act caused his injuries. If there is any doubt whatsoever as to whether an "act" or a "condition" caused the injury, then it may be presumed that a "condition" existed and recovery for unseaworthiness may be granted.[2] This would add certainty and achieve consistency in applying the "act-condition" distinction, and would also be in step with the trend of decisions expanding the doctrine of unseaworthiness.

It would, however, as another extension of "unseaworthiness," be a further perversion of the traditional scope of that doctrine. In addition, even though it would more clearly delineate the line between recovery and nonrecovery, it would confine instances of nonrecovery to those rare occasions where, by no stretch of the imagination, could it be argued that the accident occurred as a result of an unseaworthy "condition." The attainment of this certainty is desirable because it would eliminate the injustice of inconsistent decisions. It would leave intact, however, the injustice which has arisen as a result of, and which is inherent in, having to draw an arbitrary line between recovery and nonrecovery. Having afforded the protection of unseaworthiness to longshoremen and having liberally extended the scope of that doctrine so that the blameless shipowner is often held liable to a longshoreman for "conditions" which arise out of the negligence of others, it seems incongruous and unjust to hinge recovery upon the fortuitous circumstances surrounding the accident when there can be little, if any, practical difference between a "condition" and a negligent act which causes a condition. A further expansion of unseaworthiness would not obviate this injustice. It would, in fact, only highlight it.

Again, though, we decline to decide that this was *Mascuilli's* holding; rather, we merely wish to point out the possibility. The different possibilities of *Mascuilli's* effect, if any, upon the law operates as a signal to this Court to proceed with caution in this area in the absence of further elucidating opinions from a higher and binding source.

■ The respondent has asked us to decide this suit in its favor as a matter of law. We have carefully examined all the authorities relied upon by both parties herein; and we have thought long and hard about this matter. We must at this time decline respondent's request. As we have indicated, however, we do not base our decision on any interpretation of *Mascuilli*. We do recognize some of the possible conclusions available from *Mascuilli*, but the holding of that decision is unclear; and because we are involved in a nebulous area of the law even apart from the perplexing *Mascuilli* decision, we are reluctant to decide this controversy, as a matter of law, without

---

2. Such a presumption, coming into effect when a case is presented wherein it is arguable that a "condition" caused the accident, may be somewhat analogous to the "twilight zone" cases. See Davis v. Dept. of Labor and Industries of Washington, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942); Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962); Gilmore & Black, The Law of Admiralty, 344–358; Bue, Admiralty Law in the Fifth Circuit—A Compendium for Practitioners, 4 Houston L.Rev. 347, 381–384 (1966).

a firmer grasp of the facts. The scanty facts which have been developed here, while not disputed, are far too sketchy to enable this Court to rule with conviction on this matter. Consequently, at this time we feel that a trial on the merits is warranted in order to bring out the facts more fully.

Therefore, the respondent's motion for summary judgment is hereby denied.