Ernest JEFFERSON

v.

The SS BONNY TIDE, her engines, tackle,
furniture and apparel, and American
Marine Corporation.

Civ. A. No. 67–1458.

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 23, 1968.

Clifton S. Carl, Garrett & Carl, New Orleans, La., for plaintiff.

Margot Mazeau, Normann & Normann, New Orleans, La., for defendants.

HEEBE, District Judge:

This cause came on for hearing on a previous day on the motion of American Marine Corporation and the SS BONNY TIDE for summary judgment dismissing this suit.

It is now the ruling of the Court that the aforesaid motion be, and the same is hereby, granted.

## REASONS

The defendants submitted affidavits in support of the motion, evidencing the fact that the BONNY TIDE was not a "vessel" at the time of the plaintiff's injury; that, although she had been launched and was riding on navigable water, the BONNY TIDE was still under construction, unprepared for and incapable of navigation, at the time of plaintiff's injury. The plaintiff filed no counter-affidavits on the issue of the status of the BONNY TIDE, and counsel admitted on oral argument that the plaintiff was not contesting the issue of status.

Since the BONNY TIDE was not a vessel at the time of plaintiff's injury, there can be no cause of action for unseaworthiness or under the Jones Act. Consequently, Reed v. The S.S. Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), does not apply to permit the plaintiff longshoreman to circumvent the exclusiveness of his compensation remedy under the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq.

Plaintiff argued an alternative escape from the exclusiveness of the compensation remedy on the basis of § 5 of the Act, 33 U.S.C. § 905, which states in pertinent part:

"* * * if an employer fails to secure payment of compensation as required by this chapter, an injured employee * * * may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury * * *."

Plaintiff's contention is that American Marine Corporation, his employer, "failed to secure payment of compensation," by acting in concert with its compensation insurer in controverting liability to pay compensation in hearings before the Deputy Commissioner. "Failure to secure payment of compensation as required" by the Act, which gives rise to the right of election provided for in § 5, relates to the specific provision of § 32 of the Act, 33 U.S.C. § 932, which requires every employer to "secure the payment of compensation under this chapter" by doing one of two things: (1) taking out insurance with an authorized insurance company to cover possible liability for compensation, or (2) furnishing satisfactory proof to the Secretary of Labor of the employer's financial ability to pay whatever compensation for which it may become liable. See Thibodeaux v. J. Ray McDermott & Co., 276 F.2d 42 (5th Cir. 1960). Clearly, the reference in § 5 to an employer's failure to "secure payment" relates to the long-range method whereby the employer satisfies the Department of Labor that it *can*, that is, it has the *potential*, to pay compensation payments when and if required to do so under the Compensation Act. The language of § 5 does not place any additional burden on the employer who has secured his ability to discharge his burden under the Act to immediately

and actually make compensation payments to individual injured employees at the risk, if he fails to do so, of creating an election in the employee to maintain an action at law or in admiralty. The Act clearly and specifically permits the employer to contest liability for compensation by following certain procedures designed to insure a speedy determination by the Deputy Commissioner of any issues raised. 33 U.S.C. § 914(a), (d), (h), and (i).

■ Finally, the plaintiff raised the ingenious argument that Reed v. The S.S. Yaka, supra, has by implication created a further exception to the exclusiveness of the compensation remedy as against the employer. Plaintiff's argument is as follows: Reed v. The S.S. Yaka held that an employee longshoreman could recover in a tort action against his employer for the unseaworthiness of a vessel owned by the employer as shipowner, where the employee was doing the work of a traditional seaman aboard that vessel. The broader effect of this holding, says the plaintiff, was to place the shipowner-employer in exactly the same position as a third-party shipowner with respect to the employee. The Longshoremen's & Harbor Workers' Compensation Act at one time required an injured longshoreman to elect whether to receive compensation from his employer or pursue a tort action against the third-party shipowner; a 1959 Amendment to the Act dispensed with this requirement. Here, the shipowner-employer is attempting by its novel argument before the Deputy Commissioner to require the plaintiff to choose between his compensation remedy against his employer and his tort suit against the shipowner; but merely because the shipowner happens in this case to be the employer should not give the shipowner an advantage over the employee which

a third-party shipowner would not have. Because the employer has *attempted* to place the plaintiff in the position of electing between the two remedies, something the plaintiff could not be required to do by a third-party shipowner, the employer has "violated" the "basic principles" of Reed v. The S.S. Yaka, and the employee should be allowed to pursue any available action at law or in admiralty notwithstanding the exclusionary provisions of the Longshoremen's & Harbor Workers' Compensation Act.

The plaintiff's argument is obviously fatally defective. The BONNY TIDE is not a "vessel"; the employer in this case is not a shipowner. The rationale of Reed v. The S.S. Yaka therefore has no application here. As there is no "vessel," there is no possibility of there being a "member of the crew of a vessel." The mythical seaman, to whose rights those of the longshoreman acting as seaman must be equated, is simply not part of this scenario.

■ Nor do we think that the attempt by the employer to contest liability for compensation payments could vest in the plaintiff any cause of action other than that for unseaworthiness granted by Reed v. The S.S. Yaka and the compensation remedy granted by the Act. "Failure to secure compensation" does not include the mere contesting of liability for payment to a particular injured employee, see supra. And the *Reed* decision has not been extended, by even the controversial *Mascuilli* decision,[1] to allow longshoremen a tort recovery where there is no "vessel" involved. Plaintiff's contention that the *Reed* decision completely voids the status of the employer of an injured longshoreman *as employer*, whenever the employer is also the shipowner sweeps far too wide. The decision works only to insure to the longshoreman working as a seaman the rights of a seaman

1. Mascuilli v. United States, 387 U.S. 237, 87 S.Ct. 1705, 18 L.Ed.2d 743 (1967). For interpretations of the effect of the Mascuilli per curiam opinion, see Candiano v. Moore-McCormack Lines, Inc., 382 F.2d 961 (2d Cir. 1967), and the opinion of this Court in Jackson v. The S.S. Kings Point, 276 F.Supp. 451 (E.D.La. 1967).

to sue the shipowner, even though the shipowner may also be the employer. Where the longshoreman is not acting as a seaman, and he cannot be where no vessel is involved, Reed v. The S.S. Yaka has no application.

We take no position on the merit of the employer's argument that compensation payments should not be available to a longshoreman who has instituted an action in tort against his employer. That question is strictly within the province of the Deputy Commissioner in making his determination as to the employer's liability for compensation payments.