**John F. HARMON, Plaintiff,**

v.

**The BALTIMORE AND OHIO RAILROAD COMPANY, Defendant.**

Civ. A. No. 82–3093.

United States District Court, District of Columbia.

April 20, 1983.

J. Michael Farrell, Philadelphia, Pa., Kurt C. Rommel, Washington, D.C., for plaintiff.

George F. Pappas, H. Russell Smouse, Thomas L. Samuel, Baltimore, Md., Walter J. Smith, Jr., Washington, D.C., for defendant.

## MEMORANDUM

GESELL, District Judge.

Plaintiff in this case was employed by defendant as a carpenter-foreman and maintenance-of-way employee at defendant's Curtis Bay Coal Pier, in Baltimore, Maryland. The sole function of the Coal Pier was the unloading of coal from railroad cars onto seagoing barges and vessels. On March 14, 1981, plaintiff was injured in the scope of his employment. He now seeks to sue his employer under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51. Defendant seeks summary judgment on the grounds that plaintiff's injury falls under the Federal Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq.[1] If plaintiff's injury is covered by the LHWCA, his exclusive remedy lies in receipt of benefits under that Act and defendant cannot be liable under the FELA. No material fact is in dispute and the Court finds that summary judgment must be granted the defendant as a matter of law.

The LHWCA provides compensation for employee disability or death,

> ... but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).

33 U.S.C. § 903(a).

An employee is defined as

> ... any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker ....

33 U.S.C. § 902(3).

 Thus, to be covered by the LHWCA, an injured employee must meet both a "si-tus" and a "status" test. *P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 73, 100 S.Ct. 328, 332, 62 L.Ed.2d 225 (1979). It is undisputed by the parties that plaintiff's injury meets the situs requirement of having occurred "upon the navigable waters of the United States." The sole issue for decision is whether plaintiff's employment also meets the status test, that is, whether plaintiff was "engaged in maritime employment" at the time of the accident.

At Curtis Bay Coal Pier, coal is unloaded from railroad cars onto oceangoing vessels through a highly specialized process. Upon arrival, railroad cars loaded with coal are placed on one of ten tracks at the Curtis Bay facility. Electric side arms push groups of cars along the tracks to retarders which halt them. A spotter arm attaches itself to the cars and pulls them still further along the track, allows the cars to halt so that an employee can disconnect the cars from each other, and then pulls each individual car further to a dumper. A dumper operator turns the car over at a sharp angle so that the coal empties through a series of grids designed to break up lumps and passes through one of three hoppers, or funnels, onto a feeder belt. The coal proceeds from the feeder belt onto a larger conveyor belt which in turn drops it into a telescopic chute leading to the hold of the barge or ship.

It is undisputed that at least half of plaintiff's employment duties consisted of the maintenance and repair of all fixed structures involved in the coal-loading process described above. In addition, plaintiff spent considerable time performing and supervising carpentry and maintenance work on other buildings and structures in the Curtis Bay Coal Pier yard. His injury occurred while he was repairing one of the hoppers, or funnels, through which coal is dumped on its way to the hold of ships. Coal is abrasive and the hoppers are lined with steel plates, or liners. Plaintiff was

---

1. Plaintiff has apparently already applied for and received benefits under the LHWCA. Because the Court finds that plaintiff is clearly covered by the Act, it is not necessary to reach defendant's further argument that plaintiff's receipt of benefits constitutes a binding election of remedies.

transporting new liners to replace the old, worn ones when he was injured.

In *Pfeiffer, supra,* and *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 265–279, 97 S.Ct. 2348, 2357–2365, 53 L.Ed.2d 320 (1977), the Supreme Court has read the term "maritime employment" broadly and held that all persons "moving cargo directly from ship to land transportation are engaged in maritime employment.... A worker responsible for some portion of that activity is as much an integral part of the process of loading or unloading a ship as a person who participates in the entire process." *Pfeiffer, supra* 444 U.S. at 82–83, 100 S.Ct. at 337. The plaintiffs in *Pfeiffer* were found to be covered by the LHWCA because they were "engaged in intermediate steps of moving cargo between ship and land transportation." *Id.*

Although there are no cases on the issue in the District of Columbia, cases in other circuits make it clear that persons engaged "in intermediate steps of moving cargo between ship and land transportation" includes those who maintain and repair the automated equipment that has largely replaced traditional use of longshoremen and those who maintain structures housing the same. *See Graziano v. General Dynamics Corp.,* 663 F.2d 340 (1st Cir.1981), (LHWCA covers maintenance of structures housing shipyard machinery); *Price v. Norfolk and Western Railway,* 618 F.2d 1059 (4th Cir. 1980), (Railway employee injured while painting support structure of equipment used to load grain onto ships was covered by LHWCA and not FELA); *Hullinghorst Industries, Inc. v. Carroll,* 650 F.2d 750 (5th Cir.1981), *cert. denied,* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982), (LHWCA applies to carpenter injured while constructing scaffolding for other employees to use in repair of loading machinery); *Garvey Grain Co. v. Director, Office of Workers' Compensation Programs,* 639 F.2d 366 (7th Cir.1981), (LHWCA applies to employee performing general maintenance at grain loading facility).

■ Plaintiff admits to spending the great majority of his employment performing such maintenance and consequently is clearly covered by the LHWCA. The only argument plaintiff makes to the contrary is the assertion that his functions should be characterized as essential to the "traditional railroading task of unloading railroad cars." Plaintiff does not dispute, as indeed he cannot, that his functions are also essential to the traditional longshoreman's task of loading ships. The distinction is purely semantic and does not pose a genuine issue of material fact precluding summary judgment.

Summary judgment is granted defendant and the case is dismissed.