466 A.2d 209

Martha CHRISTMAN, Executrix of the Estate of Jacob F. Christman, Appellant,

v.

DRAVO CORPORATION and Johns-Manville Corporation, a corporation.

Superior Court of Pennsylvania.

Argued July 12, 1983.

Filed Sept. 30, 1983.

Alfred S. Pelaez, Pittsburgh, for appellant.

Alan Shapiro, Pittsburgh, for appellees.

Before CERCONE, President Judge, and HESTER, CAVANAUGH, WICKERSHAM, ROWLEY, WIEAND and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal by the appellant, Martha Christman, from the Order of the Court of Common Pleas of Allegheny County (per Judges McGowan and Narick) granting a Mo-

tion For Summary Judgment on behalf of appellee, Dravo Corporation (hereinafter Dravo or appellee). We affirm.

In this jurisdiction, a ruling on a motion for summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.Civ.P. 1035(b). In *Wilk v. Haus*, 313 Pa.Super. 479, 460 A.2d 288 (1983), a panel of this Court elaborated upon the standard to be utilized in ruling on a motion for summary judgment:

"The language of Rule 1035, adopted in 1966, was taken verbatim from Federal Rule of Civil Procedure 56(c). Interpretation of the scope of Rule 1035 can be aided by reference to the cases decided under the Federal rule, which establish the following criteria. On motion for summary judgment the Court must consider the entire setting of the case and all the papers that are included in the record ... One who moves for summary judgment has the burden of demonstrating clearly that there is no genuine issue as to any material fact ... The Court must consider both the record actually presented and the record potentially possible at the time of trial .... A hearing on a motion for summary judgment is not a trial on the merits, and the Court on such motion should not attempt to resolve conflicting contentions of fact ... The court is to accept as true all well pleaded facts in the plaintiff's pleadings, as well as the admissions on file, giving to the plaintiff the benefit of all reasonable inferences to be drawn therefrom ... The record must be examined in the light most favorable to the nonmoving party .... In passing upon a motion for summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment .... A party should not be deprived of an adequate opportunity

to fully develop (sic) his case by witnesses and a trial, when the issues involved make such procedure the appropriate one .... It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts ... Under such circumstances the case is not one to be decided by the Trial Judge on a motion for summary judgment."

*Id.*, 313 Pa.Superior Ct. at 482, 460 A.2d at 289–290.

With the preceding in mind, we will now "consider the entire setting of the case and all the papers that are included in the record." *Id.* To-wit, on November 7, 1979 appellant, in her capacity as executrix of the estate of her husband (Jacob F. Christman), filed a Complaint in Trespass and Assumpsit against Dravo and Johns-Manville. Therein, as is relevant to the case at bar, appellant alleged:

FOURTH: During a period of time from 1942 to 1945, the plaintiff's decedent worked for Dravo Corporation as a mechanic/welder at Neville Island, Pennsylvania. During the course of his duties, the decedent worked with and around asbestos products believed to have been supplied by the defendant, Johns-Manville, and supplied to the decedent by Dravo Corporation.

FIFTH: As a result of the decedent's exposure to the asbestos products, he developed an insidious lung condition that eventually was diagnosed as mesothelcoma [sic —mesothelioma] [on May 8, 1978]. This disease resulted in the decedent's death on February 21, 1979.

Furthermore, premised upon the grounds of negligence, breach of an implied warranty of merchantability and strict liability under Section 402A, appellant demanded judgment against Dravo and Johns-Manville in an amount in excess of $10,000.00. In response, Dravo filed preliminary objections in the nature of a demurrer, a motion to strike or, alternatively, a motion for a more specific complaint. In relevant part, Dravo's preliminary objections raised the following points:

1. ... The Complaint alleges that plaintiff's decedent was an employee of DRAVO CORPORATION who sustained exposure to asbestos products during a period of his employment with DRAVO and subsequently developed an insidious lung condition which resulted in the decedent's death on February 21, 1979 ....

2. DRAVO demurs to the Complaint which avers that the plaintiff's decedent was an employee of DRAVO and that the disease which resulted in the decedent's death developed as a result of the decedent's exposure to asbestos products during the period of the decedent's employment with DRAVO. This action cannot be maintained against DRAVO. The plaintiff's exclusive remedy is under the Pennsylvania Workmen's Compensation Act or the Federal Longshoremen's and Harborworkers' [sic] Compensation Act.

After oral argument and upon the submission of briefs, the trial court dismissed Dravo's preliminary objections in the nature of a demurrer and a motion to strike; however, the court directed the appellant to file an amended complaint setting forth, *inter alia,* "the specific grounds on which [appellant] contend[ed] that the within claim [was] removed from the Pennsylvania Workmen's Compensation Act[.]" In compliance therewith, appellant stated in Count I, Paragraph 6, of the Amended Complaint that she was entitled to bring suit in state court against Dravo "by virtue of the fact that th[e] claim [was] removed from the Pennsylvania Workman's [sic] Compensation Act under the authorization of 77 Pa.C.S. Ann. § 412 ...."[1]

1. For the sake of clarification, we hasten to mention that an employee's ability to bring suit in state court for damages against his employer is prohibited by the exclusivity provision of the Pennsylvania Workmen's Compensation Act (77 Pa.C.S.A. § 481(a) (Supp.1982–83)). *See Socha v. Metz,* 385 Pa. 632, 635, 123 A.2d 837, 839–840 (1956); *see also Turner v. Southeastern Pennsylvania Transportation Authority,* 256 Pa.Super. 43, 389 A.2d 591 (1978); *Ryden v. Johns-Manville Products,* 518 F.Supp. 311, 322, 323–324 (W.D.Pa.1981); *Carey v. Electric Mutual Liability Insurance Co.,* 500 F.Supp. 1227 (W.D.Pa. 1980); *cf. Heckendorn v. Consolidated Rail Corp.,* 502 Pa. 101, 465 A.2d 609 (1983) (In an action brought by an injured employee against a third-party tortfeasor, the employer, because he is statutorily im-

Because of the relevancy to the ultimate determination on the summary judgment motion, we observe that in the answers to Johns-Manville's interrogatories requesting the identity of all past employers in whose employ appellant's decedent "came in contact with asbestos," as well as the job title and work description, appellant responded:

a) 1942–1945—Dravo Shipping Company, Neville Island Pittsburgh, PA 15222. Ship Yard, East Yard—outfitting dock. During thei [sic] period he was exposed to asbestos[.]

b) Worked as a welder/mechanic—in hold of ship where they were putting up insulation, the asbestos was from Johns-Manville.

\*     \*     \*     \*     \*     \*

Dravo—Neville Island Ship Yark [sic]—outfitting dock worked on the waters in the hold of the ship.

\*     \*     \*     \*     \*     \*

mune from liability, may not be joined by the third party for the purpose of apportioning the employer's negligence with the negligence of the third party). Interestingly enough, however, the Longshoremen's Act has "not [been] construe[d] ... to exclude remedies [to a claimant] offered by [state] jurisdictions." *Sun Ship, Inc. v. Commonwealth of Pennsylvania*, 447 U.S. 715, 723 n. 4, 100 S.Ct. 2432, 2438 n. 4, 65 L.Ed.2d 458, 465 n. 4 (1980). In other words, the Longshoremen's Act has been interpreted to "supplement[ ], rather than supplant[ ], state compensation law." *Id.* at 720, 100 S.Ct. at 2436, 65 L.Ed.2d at 463. *Accord Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). One may have some justified apprehension in embracing this theory of concurrent jurisdiction espoused by the Court in *Sun Ship, Inc.* on the ground that it affords a claimant the opportunity to secure double recovery. However, this question was answered by the Court in *Sun Ship, Inc.* when it observed that such event would not occur "since employers' awards under one compensation scheme would be credited against any recovery under the second scheme. *See, e.g., Calbeck v. Travelers Insurance Co.*, supra, at 131, 82 S.Ct. 1196, 8 L.Ed.2d 368." 447 U.S. at 725 n. 8, 100 S.Ct. at 2439 n. 8. As a result, in light of the aforesaid, we caution the bench and bar not to be misled into believing that the Longshoremen's Act is the "exclusive" method by which an employee of a shipbuilding and/or repair enterprise can seek to recover for injuries sustained on the job. *Sun Ship, Inc.* The converse is also true. That is, a state compensation law provision indisputably declaring its awards final would not foreclose the use of federal preclusion, if need be, "to pre-empt the state compensation exclusivity clause[.]" *Sun Ship, Inc., supra,* 447 U.S. at 724 n. 6, 100 S.Ct. at 2438 n. 6.

Dravo, Neville Island, Pennsylvania, Ship Yard, East Yard worked on the water on the outfitting dock, and down in the hold of the ship without sufficient air exchange.

\*    \*    \*    \*    \*    \*

Welding and mechanic on outfitting dock on the water, in hold of ship where he walked on the insurlation [sic] and the insulation was being put into the rooms of the ship. (Appellant's "Answers to Interrogatories" for Johns-Manville, Numbered 42(a) & (b), 43(a) & (b), 44(d))

Additionally, in the "Supplemental Answers to Interrogatories" requested by Johns-Manville, appellant reaffirmed her previous assertions that:

The plaintiff's decedent between the years 1942 and 1945 worked for Dravo Corporation at Neville Island, Pennsylvania. During this time, decedent assisted in the construction of motor vessels, which, as part of the construction, required the use of asbestos materials furnished by defendant [Johns-Manville].

(Appellant's "Supplemental Answers to Interrogatories," Numbered 113)

However, albeit Dravo admitted in its answers to appellant's interrogatories that from 1941 to 1945 the major portion of the ships that it built (over 145 LST-type vessels) were for the Bureau of Ships of the United States Navy and asbestos was used as pipe insulating material in the construction of motor vessels at the Neville Island building docks, Dravo could only answer that it was "unknown" whether the decedent worked with or in the vicinity of asbestos products in performing his duties in any of the positions which he held with the corporation. (Dravo's "Answers to Interrogatories," Numbered 7, 13 & 17) Dravo did not deviate from this position. In answer to appellant's Amended Complaint (Count I, Paragraph 4—which averred that during decedent's employment for Dravo he "worked with and around asbestos products ....."), Dravo retorted:

4. With respect to the averments of Paragraph 4, it is admitted that within a period of time between 1942 and

1945, plaintiff's deecedent [sic] worked for DRAVO as a mechanic and as a fitter at Neville Island, Pennsylvania. After reasonable investigation, DRAVO is without knowledge or information sufficient to form a belief as to the truth of the averment that, during the course of his duties, the decedent worked in and around asbestos products supplied to DRAVO, by the defendant, JOHNS-MANSVILLE, [sic] and supplied to the decedent by DRAVO. Accordingly, strict proof thereof is demanded at trial. (Dravo's "Answer and New Matter to Amended Complaint," Count I, Paragraph 4)

Moreover, of relevancy here is the fact that on April 3, 1979, prior to the commencement of the instant action, appellant filed a "Widow's Claim for Death Benefits" with the Office of Workers' Compensation Programs, Employment Standards Administration of the United States Department of Labor under the Longshoremen's and Harbor Workers' Compensation Act (hereinafter the Longshoremen's Act or Act). 33 U.S.C.A. §§ 901 & 913(d). The claim was being contested by Dravo and their insurance carrier, Zurich Insurance Company. 33 U.S.C.A. § 914(d). Their position was, "No entitlement established." Thus, at issue was the question of coverage, as well as matters dealing with the statute of limitations, injury and cause of death. As of the date of the instant appeal, appellant's claim for death benefits was still pending (after 4 years) before the Office of the Deputy Commissioner. *See* note 5, *infra.*

Given the aforementioned facts, Dravo, on September 9, 1980, filed a Motion For Summary Judgment in which it averred, in essence, that inasmuch as there existed an employer-employee relationship between itself and appellant's decedent, the Longshoremen's Act was the exclusive vehicle by which its liability "to the employee or his legal representative" was to be determined. (Dravo's "Motion For Summary Judgment," Point 3) In a brief submitted in opposition to appellee's Motion, appellant argued that, notwithstanding the pending claim under the Longshoremen's Act, she was not foreclosed from electing to proceed at law

or under the Longshoremen's Act since the employer-appellee had failed to secure payment of compensation. To remedy this deficiency, affidavits by Dravo's Director of Compensation & Risk Management and insurance carrier were submitted to establish that compensation insurance had been obtained pursuant to the dictates of the Longshoremen's Act.

■ The trial court, after reviewing all of the evidence, concluded that appellee's payment of compensation insurance triggered the implementation of the exclusivity provision of the Longshoremen's Act, and the fact that appellee "was denying [appellant's] entitlement under the Longshoreman's [sic] ... Act ... [did not] open[ ] up the way for [appellant] to bring th[e] lawsuit." (Trial Court Opinion at 2) As a result thereof, summary judgment was entered by Order of the court en banc on December 22, 1980, in favor of the moving party, appellee-Dravo. This appeal followed.[2]

This case presents an issue of first impression in this jurisdiction; i.e., can an employee (or in this instance the legal representative of his estate) maintain an action at law to recover damages against his employer for an injury arising out of and in the course of employment, despite the *pendency* of an identical claim for benefits before the Deputy Commissioner under the Longshoremen's Act.

Before addressing the issue at hand, we find it appropriate to discuss the object and purpose Congress sought to achieve with the passage of the 1972 Amendments to the Longshoremen's Act.

---

**2.** Prior to discussing the merits of this case, we find it necessary to mention that subsequent to the submission of this case to our Court, but before a decision was rendered, co-defendant Johns-Manville filed for bankruptcy and a restraining order was entered by a New York District Court staying all judicial proceedings against Johns-Manville. We find that the case before this Court is not affected by the restraining order since the issue involved here is solely between the two parties, i.e., Martha Christman and Dravo, and is sufficiently isolated from Johns-Manville's debtor status under the Bankruptcy Code. *See In re Cloud Nine,* 5 B.C.D. 1377, 1 C.B.C.2d 445, 3 B.R. 202 (Bkrtcy.N. M.1980) (state actions involving issues which solely affect co-parties are not necessarily stayed by a restraining order pursuant to 11 U.S.C.A. § 362).

To start with, the Longshoremen's Act is a comprehensive legislative scheme requiring employers to provide compensation to employees who are disabled or killed in the course of their employment. 33 U.S.C.A. § 901 *et seq.* A prime purpose of the Longshoremen's Act is to provide employees with a practical and expeditious remedy for work-related injuries, while limiting the economic burden on employers by providing that their liability under the Longshoremen's Act shall be "exclusive" of all other liability. 33 U.S.C.A. § 905(a); *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977); *Cardillo v. Liberty Mutual Insurance Co.,* 330 U.S. 469, 476, 67 S.Ct. 801, 805, 91 L.Ed. 1028 (1947); *see also Director, OWCP v. Perini North River Associates,* 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983). The United States Supreme Court has long held, "Th[e. Longshoremen's] Act must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results." (Citations omitted) *Director, OWCP v. Perini North River Associates, supra,* 459 U.S. at 315–16, 103 S.Ct. at 647. One of the means by which Congress has sought to achieve such a laudable goal is by "extend[ing] coverage to protect additional workers." *Id.* Moreover, the purposes of the 1972 Amendments were to raise the amount of compensation available under the Longshoremen's Act, to eliminate the longshoremen's strict-liability seaworthiness remedy against shipowners and to eliminate shipowner's claims for indemnification from stevedores recognized in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). *See Director, OWCP v. Perini North River Associates, supra; Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 263, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 621 (1979); Anno. 46 ALR Fed. 692 § 2[a]. One of the linchpins of the Act's compensation scheme is the exclusiveness of the employer's liability for compensation payments to longshoremen. *See Passman v. Companhia de Navegacao Maritima Netumar,* 544 F.Supp. 451 (E.D.Pa.1982). The Longshoremen's Act "thereby strips an employee of the

right to maintain a tort action against his employer, if he is compensated for *injuries covered* by the Act." (Citations omitted) (Emphasis added) *Houston v. Bechtel Associates Professional Corp.*, 522 F.Supp. 1094, 1095 (D.D.C.1981). *Accord Harmon v. Baltimore and Ohio Railroad Co.*, 560 F.Supp. 914, 915 (D.D.C.1983); 33 U.S.C.A. § 903; *cf. Northeast Marine Terminal Co. v. Caputo, supra*, 432 U.S. at 251–252, 97 S.Ct. at 2351 ("In ... determin[ing] whether respondents ..., injured while working on the New York City waterfront, are entitled to compensation[,] ... we must determine the reach of the 1972 Amendments. The sections of the Act relevant to these cases are the ones providing 'coverage' and defining 'employee.' ").

At this stage of the discussion, it is appropriate to make reference to Dravo's argument that it contests no more than appellant's *entitlement* to benefits under the Longshoremen's Act. "This[, it goes on to urge,] is not a satisfactory foundation for the conclusory statement of [appellant's] counsel that DRAVO has contested [appellant's] *coverage* under the Act." (Emphasis added) (Appellee's Brief at 7) Appellant counters that Dravo, in fact, has denied *coverage* in the separate action before the Deputy Commissioner, and, thus, "Dravo has raised a genuine issue of material fact concerning the application of the Act which should preclude the entry of a summary judgment." (Appellant's Brief at 3)

As is evident from the disparate arguments of counsel, it is for this Court to decide which "question of fact" needs to be resolved as a condition precedent to entering summary judgment. In making such a determination, we begin by examining the relevant provision of the Longshoremen's Act; *viz.:*

§ 905. Exclusiveness of liability

(a) The liability of an employer prescribed in section 4 [33 U.S.C.A. § 904] *shall be exclusive and in place of all other liability of such employer to the employee,* his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover

damages from such employer at law or in admiralty on account of such injury or death, *except that if an employer fails to secure payment of compensation as required by this Act, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the Act, or to maintain an action at law or in admiralty for damages on account of such injury or death.* In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. (Emphasis added)

At the outset we note that a fair reading of Section 905(a) reveals that it does *not* afford a claimant-employee (or his legal representative) the *option* to sue in either federal or state court to vindicate his right to compensation under the Longshoremen's Act for an injury[3] "arising out of and in the course of employment." 33 U.S.C.A. § 902(2). *Compare Household Consumer Discount Co. v. Vespazini,* 490 Pa. 209, 415 A.2d 689 (1980) (Truth-In-Lending Act provides for concurrent jurisdiction); *Itri v. Equibank,* 318 Pa.Super. 268, 464 A.2d 1336 (1983) (Fair Debt Collection Practices Act provides for concurrent jurisdiction); *Richards v. Dravo Corp.,* 249 Pa.Super. 47, 375 A.2d 750 (1977) (Merchant Marine Act (Jones Act) provides for concurrent jurisdiction); *Harrington v. Philadelphia City Employees Federal Credit Union,* 243 Pa.Super. 33, 364 A.2d 435 (1976) (Federal Credit Union Act provides for concurrent jurisdiction); Federal Employers' Liability Act has concurrent jurisdiction (45 U.S.C.A. § 56).

■ Likewise, this Court concludes that the statute was clearly and precisely written by Congress so as to leave no

---

**3.** "Injury" is defined in Section 2(2), 33 U.S.C.A. § 902(2), as "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment."

room for doubt regarding *the condition* which must be met *before* a claimant will be afforded the right to sue in state court. In other words, we determine that the "question of fact" to be decided as a *sine qua non* to entering judgment is not, as appellant would have us believe, whether a claimant is covered and/or entitled to benefits under the Longshoremen's Act.[4] Rather, the more appropriate inquiry is whether the "employer fail[ed] to secure payment of compensation as required by th[e Longshoremen's] Act[.]" If such is the case, then the claimant "may elect to claim compensation under the [Longshoremen's] Act, or to maintain an action at law or in admiralty for damages on account of such injury or death." 33 U.S.C.A. § 905(a). We find support for such a holding in *Jefferson v. SS Bonny Tide*, 281 F.Supp. 884 (E.D.La.1968). In *Jefferson,* the District Court was hearing a motion filed by the employer (American Marine Corporation) and the SS Bonny Tide (a privately owned ship) for summary judgment. After disposing of the employee-Jefferson's claim that the SS Bonny Tide was a "vessel" subject to a cause of action for unseaworthiness or suit under the Jones Act, the District Court responded to Jefferson's Section 905(a) argument, which attempted to escape the exclusivity provision of the Longshoremen's Act, in a fashion that is instructive to the case *sub judice;* to-wit:

> Plaintiff's contention is that American Marine Corporation, his employer, "failed to secure payment of compensation," by acting in concert with its compensation insurer in controverting liability to pay compensation in hearings before the Deputy Commissioner. "Failure to secure payment of compensation as required" by the Act, which gives rise to the right of election provided for in

---

4. We wish to point out that both parties go off on extended discussions to reconcile the distinction and/or similarity, depending upon whose brief you read, between "coverage" and "entitlement" to benefits under the Longshoremen's Act. *For our purposes,* we wish to comment that "[t]he distinction is purely semantic and does not pose a genuine issue of material fact precluding summary judgment." *Harmon v. Baltimore and Ohio Railroad Co.,* 560 F.Supp. 914, 916 (D.D.C.1983).

§ 5[—after 1972 Amendments renumbered without change to subsection (a) of Section 905, 33 U.S.C.], relates to the specific provision of § 32 of the Act, 33 U.S.C. § 932, which requires every employer to "secure the payment of compensation under this chapter" by doing one of two things: (1) taking out insurance with an authorized insurance company to cover possible liability for compensation, or (2) furnishing satisfactory proof to the Secretary of Labor of the employer's financial ability to pay whatever compensation for which it may become liable. See *Thibodeaux v. J. Ray McDermott & Co.*, 276 F.2d 42 (5th Cir.1960). Clearly, the reference in § 5 to an employer's failure to "secure payment" relates to the long-range method whereby the employer satisfies the Department of Labor that it *can*, that is, it has the *potential*, to pay compensation payments when and if required to do so under the Compensation Act. *The language of § 5 does not place any additional burden on the employer who has secured his ability to discharge his burden under the Act to immediately and actually make compensation payments to individual injured employees at the risk, if he fails to do so, of creating an election in the employee to maintain an action at law or in admiralty. The Act clearly and specifically permits the employer to contest liability for compensation by following certain procedures designed to insure a speedy determination by the Deputy Commissioner of any issues raised. 33 U.S.C. § 914(a), (d), (h), and (i).*

   *  \*  \*  \*  \*  \**

*Nor do we think that the attempt by the employer to contest liability for compensation payments could vest in the plaintiff any cause of action other than that for ... the compensation remedy granted by the Act.* "Failure to secure compensation" does not include the mere contesting of liability for payment to a particular injured employee, see supra.

(Emphasis added in part)

*Id.* at 885–886. What is to be gleaned from the aforesaid is that where an employer fails to secure payment of compensation under the Longshoremen's Act, the injured employee, or his legal representative, in case death results from the injury, has the right to elect to claim compensation under the Longshoremen's Act or to maintain an action at law or in admiralty for damages on account of such injury or death. Therefore, "[t]he election to proceed to a suit against the employer is available only in the event of the employer failing to secure payment of compensation as provided in the Act. Where an employer has complied with the law, any action on his part to controvert liability in any particular case cannot be construed as 'failing to secure payment of compensation[,]' " 1A Benedict on Admiralty § 29 at 2–27 (Rev. 7th ed. 1982); *see also* Norris, Martin J., 1 The Law of Maritime Personal Injuries § 63 at 116 (3rd ed. 1975), and, as determined by this Court after assiduously reviewing the legislative history and relevant case law on the subject, does not "creat[e] an election in the employee [or his legal representative] to maintain an action at law or in admiralty." *Jefferson v. SS Bonny Tide, supra,* 281 F.Supp. at 885.

■ Instantly, as is made reference to in *Jefferson* and Benedict on Admiralty, the employer-Dravo has secured compensation and proof of such a fact is documented in the record (by means of affidavits from Dravo's insurance carrier and Director of Compensation & Risk Management—whose *authenticity* and *content* is not questioned by the appellant). Also, such evidence was considered by the trial court in its decision to grant Dravo's Motion For Summary Judgment. (*See* Trial Court Opinion at 1–2) Consequently, to permit the appellant to maintain a suit in state court for damages, absent any evidence that the employer has neglected to secure compensation, would eviscerate the exclusivity provision of Section 905(a) and sanction a circumvention of the Longshoremen's Act that was not intended, at least from our review of the legislative history, by Congress.

Further, as correctly pointed out by Dravo, under the Longshoremen's Act workmen's compensation claims are adjudicated in the first instance before Administrative Law Judges (ALJ). 33 U.S.C.A. § 919(d). Cases that raise substantial questions of law or fact may be heard by an administrative appeals board, called the Benefits Review Board (Board). *Id.* at § 921(b)(1) & (3). The three-member Board is a "quasi-judicial" independent body, appointed by the Secretary of Labor, *id.* at § 921(b)(1); 20 C.F.R. §§ 801.101–103, 801.201 (1978). Petitions for review of Board orders are heard by the United States Court of Appeals, 33 U.S.C.A. § 921(c). Prior to the 1972 Amendments claims under the Longshoremen's Act were heard in the first instance by deputy commissioners; judicial review was by writ of injunction in the District Courts, 33 U.S.C.A. § 921 (amended 1972), with a right of appeal to the appellate courts, 28 U.S.C.A. §§ 1291–1292. *See Northeast Marine Terminal Co. v. Caputo, supra,* 432 U.S. at 254 n. 3, 97 S.Ct. at 2352 n. 3; *Director, OWCP v. National Van Lines, Inc.,* 613 F.2d 972, 976 n. 1 (D.C.Cir.1979), *cert. denied,* 448 U.S. 907, 100 S.Ct. 3049, 65 L.Ed.2d 1136 (1980). For the sake of consistence, since all parties make reference to the arbiter of appellant's compensation claim as the Deputy Commissioner, rather than the more appropriate ALJ, we have retained that appellation for purposes of our discussion.

Because of the elaborate scheme of review available to an aggrieved claimant and employer, we deem it prudent to refrain from delving into the question of *coverage* under the Longshoremen's Act, *see Thibodeaux v. J. Ray McDermott & Co.,* 276 F.2d 42 (5th Cir.1960), and leave such an inquiry to the governmental body specifically created by Congress to deal with the matter.[5] Appellant, who urges us to do

5. It is disconcerting to this Court, and thus it needs to be aired here, that *four years* have elapsed since appellant first filed her claim for benefits under the Longshoremen's Act. *See* 33 U.S.C.A. §§ 912 & 913. As of the date of this Opinion neither side has informed this Court whether a ruling (either granting or denying the claim) was entered by the Deputy Commissioner. This seems rather incredulous

otherwise, would have us believe that Dravo is arguing mutually exclusive positions, i.e., if suit cannot be had in state court, Dravo's contravention of her claim under the Longshoremen's Act could leave her with nothing. We can neither confirm nor deny such a belief. However, we do know that if appellant's decedent is held *not to be covered* under the Longshoremen's Act (*see generally Harmon v. Baltimore and Ohio Railroad Co., supra; Houston v. Bechtel Associates Professional Corp., supra*), and, thus, not entitled to benefits, appellant will be afforded the opportunity to have the ruling of the administrative agency (Board) reviewed in the federal courts. *See Thornton v. Brown & Root, Inc.*, 707 F.2d 149 (5th Cir.1983); *Todd Shipyards Corp. v. Black*, 706 F.2d 1512 (9th Cir.1983)

in light of the time strictures set forth in the Longshoremen's Act regarding the rendition of a ruling on a claim for benefits. For example, 33 U.S.C.A. § 919 is captioned "Procedure in Respect of Claims." In subsection (c) of Section 919 it is written:

The deputy commissioner shall make or cause to be made such investigations as he considers necessary in respect of the claim, and upon application of any interested party shall order a hearing thereon. If a hearing on such claim is ordered the deputy commissioner shall give the claimant and other interested parties at least ten days' notice of such hearing, served personally upon the claimant and other interested parties or sent to such claimant and other interested parties by registered mail or by certified mail, and *shall within twenty days after such hearing is had, by order, reject the claim or make an award in respect of the claim. If no hearing is ordered within twenty days after notice is given as provided in subdivision (b) [of Section 919], the deputy commissioner shall, by order reject the claim or make an award in respect of the claim.* (Emphasis added)

In light of the preceding, and given the fact that the parties have submitted as part of the record a copy of the claim for benefits indicating that at least one hearing was conducted before the Deputy Commissioner, the Court is in a quandary as to why no ruling on appellant's claim has been rendered. And if a ruling has been issued, why this fact has not been communicated to the Court. If the matter of prompting the Deputy Commissioner to decide appellant's request for benefits had been pursued more vigorously, assuming for the sake of argument that no ruling has been made, the appeal process could have followed more along the lines originally intended by Congress, *see* discussion *supra,* instead of deviating from its intended path and ending up (rather precipitously we might say given our ultimate ruling) in state court in the form of a complaint in trespass and assumpsit.

(asbestosis case). Furthermore, it cannot be denied that the dominant intent of Congress in promulgating the Act "was to help longshoremen." *Keller v. United States,* 557 F.Supp. 1218, 1222 (D.N.H.1983). Consistent with this philosophy has been the " 'strong legislative policy favoring awards in arguable cases,' " *U.S. Industries/Federal Sheet Metal, Inc. v. Director, OWCP,* 455 U.S. 608, 617, 102 S.Ct. 1312, 1319, 71 L.Ed.2d 495 (1982), and the belief that the " 'Act must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.' " *Director, OWCP v. Perini North River Associates, supra,* 459 U.S. at 315–16, 103 S.Ct. at 647. Thus, it has been "recognized that those employees not covered by the [Longshoremen's Act] should not get the short end of Congress' stick." *Burks v. American River Transportation Co.,* 679 F.2d 69, 75 (5th Cir.1982). Although we have no way of forecasting the outcome of appellant's trek through the federal appeals process, we can say that, *in light of the facts instantly,* such a course is mandated by law and this Court has no right to intervene in the journey.

There has been some suggestion on the part of appellant that a ruling on the propriety of her suit in the Court of Common Pleas of Allegheny County be stayed pending the outcome of the Deputy Commissioner's determination on her request for compensation. She cites us to *Greer v. United States Steel Corp.,* 475 Pa. 448, 380 A.2d 1221 (1977) to buttress her position. (*See* Appellant's Reargument Petition)

In *Greer,* the employee sought common law recovery from his employer for a disease allegedly contracted while on the job. Concurrently with the filing of the common law action the employee submitted a claim for workmen's compensation. In a portion of the Opinion, the Supreme Court seemed to say, although not unequivocally, that "recovery at common law would not be barred if recovery could not be had under the Compensation Act." *Id.,* 475 Pa. at 451, 380 A.2d at 1222. In any event, the Supreme Court reversed this Court's grant of the employer's petition for a judgment

on the pleadings on the basis that, since it could not be ascertained from the pleadings whether the disease came within the purview of the Pennsylvania Occupation Disease Act (77 P.S. § 1201 *et seq.*), "[i]t m[ight] well be appropriate for the court below to grant a stay pending administrative action in accordance with the doctrine of primary jurisdiction." *Id.*, 475 Pa. at 453, 380 A.2d at 1223.

We find *Greer* inapposite for the reason, which is a most compelling one, that our Supreme Court was preoccupied with the interpretation of a *state* statute and the dire consequences that might befall the claimant-employee if his request for compensation was denied because the disease he had contracted fell outside the perimeter of the statute. In contrast, we are presented with a *federal* statute that provides in very lucid terms the exact circumstances under which a claimant may bring a suit in state court for damages, that is, if the employer fails to secure insurance the Longshoremen's Act is not the "exclusive" vehicle by which compensation can be attained.[6]

Therefore, in light of the aforesaid, we are of the view that the trial court was correct in granting summary judgment because appellant-claimant's exclusive remedy was under the Longshoremen's Act once the employer-Dravo had established that it had obtained compensation insurance.

Order affirmed.

**6.** This Court is well aware that in *Griffith v. Wheeling-Pittsburgh Steel Corp.*, 521 F.2d 31 (3rd Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976), the Third Circuit Court of Appeals reversed the District Court's grant of summary judgment on behalf of Wheeling, the *pro hac vice* owner of the vessel on which appellant-employee was injured. Because there remained various matters that were material in nature, that could not have been conclusively held to have been uncontroverted, the Third Circuit reversed and remanded. Additionally, the Court held that an employer-owner *pro hac vice* of a vessel could be held liable to a crew member of the barge injured because of someone's negligence. Thus, Section 905(a) was held to be no bar to a suit against a "vessel" chartered to a *pro hac vice* owner who was also an employer liable for compensation payments. However, we do not find that *Griffith* controls the case instantly, despite appellant's arguments to the contrary, since Dravo was in the business of *constructing ships* and not owning them *pro hac vice.*